IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
June 26, 2001 Session

## STATE OF TENNESSEE v. DEMETRIUS HOLMES

**Direct Appeal from the Criminal Court for Knox County**
**No. 67734     Richard R. Baumgartner, Judge**

---

### No. E2000-02263-CCA-R3-CD

---

A Knox County jury convicted the defendant of aggravated robbery, and the trial court sentenced him as a Range I offender to eleven years incarceration. The defendant now appeals and raises the following issues: (1) whether the trial court erred by not granting a mistrial when a detective improperly testified that the Defendant was "well known for home invasions," (2) whether the state failed to disclose fingerprint evidence in a timely fashion, and (3) whether sufficient evidence supported the defendant's conviction for aggravated robbery. Finding that the trial court erred in denying the motion to declare a mistrial, we reverse the judgment of the trial court and remand for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, J., joined. ROBERT W. WEDEMEYER, J., filed a dissenting opinion.

Keith E. Haas, Sevierville, Tennessee, for the Appellant, Demetrius Holmes.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Randall E. Nichols, District Attorney General; and G. Scott Green, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

The defendant, Demetrius Holmes, was charged with the aggravated robbery of Sam Love. Prior to trial, the trial court granted the defendant's motion *in limine* and instructed the state to refrain from mentioning or using in evidence any prior bad acts that the defendant may have committed and any convictions that the defendant obtained prior to the charge in this case. *See* Tenn. R. Evid. 404(a), (b). The defendant also filed a pretrial motion to dismiss in which he alleged that the state failed to disclose exculpatory evidence in a timely manner. The trial court denied this motion.

The victim, Sam Love, testified at trial that on July 28, 1998 at around 1:00 or 1:30 p.m., a black male came to his apartment door. The inner door was open, but the glass storm door was closed. The victim's visiting friend, Kathy Williams, asked Love to go to the door because she did not recognize the man standing outside the door. The man at the door asked for directions, and when Love opened the door slightly, the man "snatched the door open" and pulled out a silver-colored gun. Love grabbed the intruder and struggled with him. After the intruder yelled for help, a second person, who had been outside until this point, took the gun, and both men made Love lie face-down on the floor. One of the men held the gun to his head and demanded money, although Love was unsure which man told him to do so. Love gave the men approximately $52. After the men left, Love got up as soon as he heard the door close and saw the two men heading east in a black Jeep. The next day, in a photo lineup at the police station, Love identified the defendant as the man who knocked on his door and robbed him.

Kathy Williams testified that she was at Love's apartment on the afternoon of July 28, 1998. When there was a knock at the door, she told Love that someone was there to see him. At the police station on the following day, she identified the defendant as the man who was at Love's door. Williams testified that as Love was talking with the defendant at the door, the defendant held a silver-looking gun. Williams yelled for the man not to hurt Love and then ran out the back door. While outside, Williams saw a black Jeep Cherokee with the driver's side door open. Williams testified that she saw the defendant and another man come out of Love's apartment, get into the Jeep, and drive away.

The day after the robbery, James Quick of the Knoxville Police Department was dispatched to Blount County to locate the defendant. Quick found the defendant driving a black Jeep Cherokee. Quick searched the vehicle and found a Lorcin .380 handgun under the driver's seat.

Terry Clowers, a detective in the Major Crimes Unit of the Knoxville Police Department, testified that he investigated the robbery and interviewed the defendant on July 29, 1998. The defendant said that he could not have committed the robbery because he was "hiding out" with a girl named "Misty" at the Comfort Inn in Strawberry Plains. In the beginning of the interview, the defendant stated that his Jeep had been stolen; however, the defendant later told Clowers that he had loaned the vehicle and his gun to Mike Tumblin. According to police records, the car was reported stolen at 4:45 p.m. on the day of the robbery. Clowers stated that he let Love and Williams see the defendant in the police station, and they both identified him as the man that robbed Love.

Gerald Smith, a technician in the Investigative Support Unit of the Knoxville Police Department, testified that none of the fingerprints obtained from Love's storm door belonged to the defendant. Daniel Crenshaw, Senior Evidence Technician for the Knoxville Police Department, testified that none of the prints found matched those of the defendant or Mike Tumblin. Crenshaw also testified that Love and Williams refused to be fingerprinted.

The state and the defense stipulated that Misty Moore rented a hotel room in Strawberry Plains from July 27, 1998 until July 29, 1998 and that Moore would have testified that on July 28, 1998, she went to work sometime between 9:00 and 11:00 in the morning and returned that evening around 8:00. Moore also would have testified that the defendant was in the room when she left that morning and when she returned that evening.

Based on the evidence as summarized above, the jury convicted the defendant of aggravated robbery.

## 1. Denial of Motion for Mistrial

The defendant's first issue pertains to the trial court's denial of a motion for mistrial after Detective Clowers, a state's witness, testified that the defendant had a reputation for home invasion crimes.

In order to understand this issue, some background information is helpful. Prior to jury selection, on the first day of trial, the trial court heard argument on several defense motions, including "a standard motion in limine about prior bad acts and/or convictions that Mr. Holmes may have." The trial court instructed the state, "Approach the bench before you raise any prior bad acts. Get permission, Mr. Green. The rule requires that." The record indicates that Detective Terry Clowers was present in the court room when the trial court made this ruling.

Later, during cross-examination of Detective Clowers, defense counsel asked Clowers, "Why did you put a BOLO out on Kamikas Cates?" Clowers responded, "Kamikas Cates is well known for home invasions, just as Meechi is." "Meechi" is a nickname for the defendant that was used numerous times during the trial. The defense moved for a mistrial, alleging that this comment by Detective Clowers violated the trial court's ruling on the motion *in limine* pertaining to prior bad acts. The trial court ruled that the statement did not refer to a specific prior bad act but was an expression of the officer's opinion of the defendant. The trial court did not declare a mistrial but instructed the jury that Detective Clowers' comment was to be disregarded as "unsubstantiated opinion." The defendant argues that Detective Clowers' comment was so prejudicial to the defendant that the curative instruction failed to ensure that the defendant would receive a fair trial.

In order to resolve this issue we must first determine whether the evidence of the defendant's reputation for committing home invasion crimes was admissible, and if not, whether its injection into the evidentiary arena necessitated a mistrial.

Tennessee law provides that evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity with the character or trait on a particular occasion. Tenn. R. Evid. 404(a). Evidence of other crimes, wrongs, or prior bad acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. Tenn. R. Evid. 404(b). Because prior bad acts may be admissible for other purposes and Tennessee Rule of Evidence 404(b) requires a hearing outside the jury's presence, the trial

court's ruling that the prosecutor must first seek permission before eliciting evidence of prior bad acts was proper.

When Detective Clowers informed the jury that the defendant had a reputation for burglarizing homes or robbing the occupants, he injected inadmissible evidence into the trial. This evidence was particularly damaging because it informed the jury that the defendant had a reputation for committing crimes similar to the offense on trial. *State v. Rickman*, 876 S.W.2d 824, 828 (Tenn. 1994) (The use of evidence of prior crimes similar to the offense on trial is particularly hazardous because it carries with it the risk that the jury will convict the defendant based upon his propensity to commit the crime, rather than upon the strength of the state's evidence.). Prohibiting the use of his sort of evidence is at the very heart of Rule 404(b). *See, e.g., State v. Moore*, 6 S.W.3d 235, 237 (Tenn. 1999). Moreover, the state offers no rationale that a "material issue exists other than conduct conforming with a character trait" that would justify the use of the information pursuant to Rule 404(b)(2), and we discern no such issue. *See generally State v. McCary*, 922 S.W.2d 511, 514 (Tenn. 1996) (evidence of a criminal defendant's character may become admissible when it logically tends to prove material issues which have been divided into three categories: (1) the use of "motive and common scheme or plan" to establish identity, (2) to establish the defendant's intent in committing the offense on trial, and (3) to "rebut a claim of mistake or accident if asserted as a defense"); *State v. Luellen*, 867 S.W.2d 736, 740 (Tenn. Crim. App. 1992) ("Only in an exceptional case will another crime, wrong, or bad act be relevant to an issue other than the accused's character."). Furthermore, filtering the information via characterizing it as the officer's opinion does not sanitize the otherwise inadmissible information and is, therefore, unavailing. The bottom line is that the information has no legitimate probative value and was extremely prejudicial. Had the defendant the opportunity to obtain a pre-admission Rule 404(b)(1) hearing, the trial court would have been constrained to exclude the evidence.

Having determined that the evidence offered by Detective Clowers was inadmissable, we therefore consider whether the trial court erred in denying the defendant's motion for a mistrial. The granting or denial of a mistrial is a matter within the sound discretion of the trial court. *State v. McKinney*, 929 S.W.2d 404, 405 (Tenn. Crim. App. 1996). This court will not disturb such a decision absent a finding of an abuse of discretion. *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). "The purpose for declaring a mistrial is to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict." *Id.* A trial court should grant a mistrial only when it is of "manifest necessity." *Id.*; *Arnold v. State*, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977).

Although Tennessee courts do not apply any exacting standard for determining when a mistrial is necessary after a witness has injected improper testimony, we have often considered (1) whether the improper testimony resulted from questioning by the state, rather than having been a gratuitous declaration, (2) the relative strength or weakness of the state's proof, and (3) whether the

-4-

trial court promptly gave a curative instruction.[1]  *See State v. William Dotson*, No. 03C01-9803-CC-00105, slip op. at 9 (Tenn. Crim. App., Knoxville, June 4, 1999).  That analytical framework is helpful in the case at bar.

The prosecution was not at fault in eliciting the evidence in this case, as Detective Clowers made his improper declaration during cross-examination by the defense.  However, as a law enforcement officer testifying for the prosecution, Detective Clowers is an agent of the state.  The record reflects that he was in the courtroom when the judge ruled that the prosecutor must obtain permission before introducing bad act evidence about the defendant.  Through his spontaneous declaration, Detective Clowers circumvented the court's ruling as well as the rules of evidence.

The strength of the state's case was not great, particularly as compared with the magnitude of this error.  The defendant's trial strategy was that he was not the offender.  The soundness of the state's case rested upon credibility of the victim and his female friend.  The defendant challenged their identifications of him.  The absence of the defendant's fingerprints on the victim's door arguably belies Love's and Williams' identifications of the defendant as the offender.  Thus, the state's case is not so overwhelming as to render ineffectual the egregious violation of Rule 404(b).  *See State v. Moore*, 6 S.W.3d 235, 239 (Tenn. 1999) ("the line between harmless and prejudicial error is in direct proportion to the degree . . . by which proof exceeds the standard required to convict") (citation omitted).  In our view, the evidentiary error may well have been the deciding factor for the jury, allowing them to conclude that "because *he did it once, more than likely he did it again*."  *State v. Roberts*, 703 S.W.2d 146, 147 (Tenn. 1986) (emphasis in original).

Finally, we consider whether the evidentiary error was abated by the judge's cautionary instruction.  The judge declined to give the instruction contemporaneously to the objection to the testimony but waited until the conclusion of the cross-examination and redirect examination of the witness (which incidentally closed the state's proof in the case).  *Compare William Dotson*, slip op. at 11-12 (manifest necessity for mistrial existed because jury was not given curative instruction regarding improper evidence until the following day) *with State v. Hall*, 976 S.W.2d 121, 147-48 (Tenn. 1998) (appendix) (improper evidence of defendant's prior crime did not require granting of mistrial because trial court immediately gave a curative instruction).  *More importantly, the instruction given was not curative.*  While instructing the jury to disregard the remark about the defendant having a reputation for home invasions, the trial court premised its directive upon the remark being "Office Clowers' unsubstantiated opinion."  A reasonable juror may well have concluded that had the opinion been substantiated -- or that if it were in fact based upon substantiated facts --  the information it imparted to the jury would be justiciable.  The trial court failed to indicate disapproval of the information, except in the form in which it was delivered.  The jury was not informed of the impermissible danger of propensity evidence.  It was not told that the remark was inadmissible evidence and that its inadmissibility formed the basis for the requirement

---

[1] These factors are non-exclusive and may not be pertinent in every case.  *William Dotson*, slip op. at 9; *see State v. Mounce*, 859 S.W.2d 319, 322 (Tenn. 1993) (determination of propriety of mistrial is not subject to mechanistic determination and should be made on the facts of each individual case).

that they disregard the remark. This particular instruction failed to abate the prejudicial impact of the testimony.

When the foregoing factors are considered, the prejudicial effect of the improper evidence is palpable. We conclude that the opportunity for an impartial verdict was lost, thereby creating manifest necessity for a mistrial. *See Williams*, 929 S.W.2d at 388. The trial court should have granted the defendant's motion for a mistrial. *See, e.g., State v. Blankenship*, 214 Tenn. 355, 410 S.W.2d 159 (1966) (trial court should have granted mistrial after state's witness testified that defendants had at first pleaded guilty but later withdrew their pleas); *State v. David Johnson*, No. W1998-00687-CCA-R3-CD, slip op. at 10-15 (Tenn. Crim. App., Jackson, Mar. 14, 2001) (in context of defendant's double jeopardy challenge, appellate court held that trial court had properly granted mistrial after prosecutor's improper questioning of witness resulted in testimony that the defendant "just got out of jail" and "always goes around robbing people"). Accordingly, we must reverse the conviction and remand the case for a new trial in which the improper, inflammatory evidence of the defendant's reputation for committing home invasion crimes is not injected.

## 2. Exculpatory Evidence.

The defendant argues that the state failed to disclose fingerprint evidence in a timely fashion. Pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), defense counsel requested the results of "any scientific tests or experiments" performed by or known to the state and "[a]ll information of whatever form, source or nature which tends to exculpate the defendant." However, the state did not provide the results of fingerprint analyses conducted on Love's storm door until the week before trial.

In order to establish a due process *Brady* violation, the defendant must establish the following:

1. The defendant must have requested the information (unless the evidence is obviously exculpatory, in which case the state is bound to release the information whether requested or not);
2. The state must have suppressed the information;
3. The information must have been favorable to the accused; and
4. The information must have been material.

*State v. Edgin*, 902 S.W.2d 387, 389 (Tenn. 1995). However, a delayed disclosure of exculpatory information, as opposed to a complete failure to disclose, may not be a *Brady* violation unless the delay causes prejudice. *State v. Joan Elizabeth Hall*, No. 01C01-9710-CC-00503 (Tenn. Crim. App., Nashville, Jan. 28, 1999). In cases of delayed disclosure, the inquiry is whether the delay prevented the defense from effectively preparing for and presenting the defendant's case. *State v. Caughron*, 855 S.W.2d 526, 548 (Tenn. 1993); *see United States v, Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 3384 (1985) (failure to respond to *Brady* request may impair adversary process because defense

-6-

"might abandon lines of independent investigation, defenses, or trial strategies that it otherwise would have pursued").

In this case, the defendant failed to show that he was prejudiced by the delay. The information was provided to him the week before trial, and he was able to use it at trial. Defense counsel thoroughly cross-examined Detective Clowers at trial and established that none of the fingerprints taken from the door matched those of the defendant. We find no error in the *Brady* claim. At any rate, the disclosure was made well in advance of the retrial that we have now ordered on remand.

### 3. Sufficiency of the Evidence.

The defendant argues that insufficient evidence was presented at trial to convict him of aggravated robbery. In particular, he claims that the only direct evidence regarding the identification of the perpetrator was the testimony of Sam Love and Kathy Williams, and he contends that their statements were contradictory.

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e)*; Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791 (1979); *State v. Duncan*, 698 S.W.2d 63, 67 (Tenn. 1985). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000).

In determining the sufficiency of the evidence, this court should not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *Liakas*, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the convicted defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *Id.*

Even though issues of credibility were raised at trial, the evidence was clearly sufficient to support the defendant's conviction for aggravated robbery. Both Love and Williams identified the defendant in a photo lineup and in court as the man who robbed Love. Love testified that when the robbers left his apartment, he looked outside and saw the men drive away in a black Jeep. Williams, who was already outside when the robbers fled, testified that she also saw two men

come from Love's apartment and get into a black Jeep Cherokee. Love and Williams also both testified that the man who knocked on the door had a silver-colored gun. When the defendant was found by police, he was driving a black Jeep Cherokee, and in it police found a silver-colored gun similar to the one described by Love and Williams.

The jury obviously accredited the testimony of the state's witnesses. Although there is some discrepancy in the witnesses' descriptions of the defendant, it is within the jury's province to determine the credibility of the witnesses and to resolve the factual issues raised by the evidence. *State v. Williams*, 920 S.W.2d 247, 254 (Tenn. Crim. App. 1995).

Because the trial court should have declared a mistrial, the judgment of the trial court is reversed, and the case is remanded for a new trial.

_____
JAMES CURWOOD WITT, JR., JUDGE