**STATE of Tennessee, Appellee,**

v.

**Herbert Earl LUELLEN and Robert McKinnie, Appellants.**

Court of Criminal Appeals of Tennessee, at Jackson.

Nov. 18, 1992.

Karen T. Fleet, Bolivar, for Luellen.

Thomas M. Minor, Somerville, for McKinnie.

Charles W. Burson, Atty. Gen. and Reporter, Amy L. Tarkington, Asst. Atty. Gen., Nashville, Elizabeth T. Rice, Dist. Atty. Gen., Somerville, for State.

## OPINION

SUMMERS, Judge.

This record presents an appeal as of right by the Appellants, Herbert Luellen and Robert McKinnie, from a judgment entered by the Circuit Court of Fayette County, approving a jury verdict finding both appellants guilty of possession of cocaine with intent to sell. Luellen presents three issues and McKinnie two issues for our review.

I. Is the evidence sufficient to support a finding of guilt as to possession of cocaine with intent to sell? (both appellants).

II. Did the trial court err in overruling appellant Luellen's motion to suppress the statement of Captain Lake? (appellant Luellen's issue only).

III. Did the trial court err in granting the state's motion to allow testimony of prior bad acts during its case in chief? (both appellants).

We reverse and remand.

## FACTS

Fayette County and Hardeman County are contiguous counties in the southwestern part of Tennessee. The arrest and indictment of both appellants stem from a joint operation between law enforcement officials of both counties. The first witness to testify for the state was David Smith, Chief Deputy with the Hardeman County Sheriff's Department. On November 16, 1990, Smith received information from an informant that the appellants had gone to a Billy Higgs' residence and borrowed his blue Mitsubishi pickup truck for the purpose of driving to Memphis to obtain some cocaine. Chief Smith called the Chief Deputy of Fayette County, Bobby Smith, and advised him of this information. Both sheriffs' departments then mobilized to investigate and apprehend the appellants if the information was accurate.

Chief Smith of Hardeman County proceeded to Fayette County because he knew the appellants would take this route back from Memphis. He heard on his radio that Officer Chuck Pugh of Fayette County had stopped the appellants' vehicle in the Moscow area. He arrived at the scene, east of Moscow on Highway 57. The vehicle appellants had been driving was a blue Mitsubishi pickup truck registered to Billy Higgs. Luellen was driving, with McKinnie and a juvenile, Mickey Williams, as passengers. Officers gained Luellen's consent to search the vehicle, but found nothing inside. The juvenile, Williams,

was then patted down by Officer Pugh before Williams was to enter Pugh's patrol car. Inside Williams' shirt was an envelope containing five bags of cocaine. A subsequent laboratory analysis revealed the amount of cocaine to be 32.4 grams.

Both Luellen and McKinnie denied at that time knowing anything about the cocaine which was found on Mickey Williams. They were arrested and charged with possession of cocaine with intent to sell or deliver.

Captain Hughland Lake of the Hardeman County Sheriff's Department testified that appellant Luellen volunteered some information to him subsequent to the arrest while Luellen was an inmate at the Hardeman County Jail. Captain Lake said that while Luellen was exercising one Sunday they engaged in a conversation about Luellen "straightening up his life . . . ." Captain Lake testified that the information was voluntarily given, and that he was not intending to act as an investigator concerning the November 1990 arrest of Luellen and McKinnie. Nevertheless, Luellen informed Captain Lake that he and McKinnie had gone to Memphis to get some cocaine, and on the way back were stopped by the police. He stated that when he saw the police he told McKinnie to "get rid of the stuff." The state used this testimony, over the objection of the appellants, in its case in chief.

Mickey Williams testified that he knew both appellants prior to the date of the offense. In November 1990, Williams was 14 years old and lived with his mother in Memphis, Tennessee. He saw the appellants at a store across the street from his house and asked them if he could have a ride to his grandmother's house in Grand Junction. Grand Junction is a small town located in the southern section of Hardeman County. The appellants agreed and let him ride in the pickup truck with them. He verified that while they were driving through Moscow, Tennessee, they spotted a police car behind them. When the police car turned on its blue lights, Luellen told McKinnie to get the package. McKinnie retrieved the package from beneath the dashboard and put it in Williams' pocket thinking that the police would not search the juvenile. Officer Pugh,

however, searched Williams and found the cocaine. Williams testified that he did not know the package contained cocaine prior to his search by the officers.

Neither appellant testified in his own behalf. Although Luellen had originally decided to testify and had actually taken the witness stand, he later changed his mind. It appears from the record that part of the reason for his change of heart was to preserve evidentiary issues on appeal.

The only substantive witnesses presented by either appellant offered little in the way of defense. Patricia Williams testified that she asked Luellen if he would allow her son, Mickey, to ride with him to Hardeman County on the day in question. Apparently, this information was intended to show the jury that having the juvenile ride with the appellants was not a precognitive event.

Ernestine Luellen testified that her ex-husband, appellant Luellen, borrowed Billy Higgs' truck because his vehicle was not running. Apparently, this information was elicited to convince the jury that their use of a foreign vehicle was not for the purpose of being less conspicuous to law enforcement officials.

## I.

 Both appellants challenge the sufficiency of the evidence. In Tennessee, great weight is given to the result reached by the jury in a criminal trial. A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Williams,* 657 S.W.2d 405 (Tenn.1983). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832 (Tenn.1978). Moreover, a guilty verdict removes the presumption of innocence which the appellant enjoyed at trial and raises a presumption of guilt on appeal. *State v. Grace,* 493 S.W.2d 474 (Tenn. 1973). The appellant has the burden of overcoming this presumption of guilt. *Id.*

 Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the

evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Duncan*, 698 S.W.2d 63 (Tenn.1985); Rule 13(e), T.R.A.P. The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. *State v. Sheffield*, 676 S.W.2d 542 (Tenn. 1984); *Byrge v. State*, 575 S.W.2d 292 (Tenn. Crim.App.1978).

██ In order to sustain the convictions of both appellants, the state had to prove beyond a reasonable doubt that the appellants possessed cocaine with the intent to sell. Actual physical possession of the cocaine is not required in order to sustain a conviction. *See State v. Brown*, 823 S.W.2d 576 (Tenn.Crim.App.1991). Furthermore, regarding intent to sell, it is clear that one's intent concerning a criminal offense is a matter to be determined by the jury from all the surrounding circumstances and facts. Based upon the large amount of cocaine found in this case, the jury could clearly presume that the appellants possessed this drug with the intent to sell.

The appellants have failed to carry their burden of overcoming the presumption of guilt on appeal. The evidence is sufficient for any rational trier of fact to find beyond a reasonable doubt that the appellants were guilty of possession of cocaine with intent to sell. This issue is without merit.

## II.

██ Luellen argues that the trial court erred in overruling his motion to suppress the statement of Captain Lake which he made while exercising at the Hardeman County Jail. He argues that both his Sixth Amendment and Fifth Amendment rights were violated. We respectfully disagree.

In Tennessee it is well-established that the findings of the trial judge at a hearing on a motion to suppress are binding upon this Court if there is any evidence to support that determination. *See State v. Johnson*, 717 S.W.2d 298, 304 (Tenn.Crim.App.1986). This record clearly presents sufficient evidence to support the trial judge's determination.

Captain Lake testified at the motion to suppress that he had known appellant Luellen for over ten years. He was supervising the inmates at the Hardeman County Jail one Sunday afternoon, when Luellen, who was jogging around the perimeter of the yard, stopped and began a conversation with him. Captain Lake asked Luellen when he was going to straighten up his life. Luellen then began talking about getting caught on drug charges in Fayette County. Lake knew nothing about the new drug charges; he believed that all of Luellen's drug charges had been completed. He had taken no part in the November 1990 Fayette County investigation. Captain Lake testified that he was not interrogating or questioning Luellen. Luellen was free to walk away from the conversation. Lake was of the opinion that this was a friendly, voluntary, non-inquisitorial dialogue between the two men.

Both the state and the appellant have presented excellent briefs in this regard. They have given us a thoughtful recitation of the law in this area. We find, as did the trial judge, that the statement to Captain Lake by the appellant Luellen was in the course of a voluntary conversation. It was not under the circumstances of a custodial interrogation. The trial court properly overruled the appellant's motion to suppress. This issue is without merit.

## III.

Both appellants contend that the trial court erred in admitting the testimony of Chief David Smith regarding their prior criminal activity. On the morning of trial, the District Attorney General made a motion for the court to allow the introduction of testimony concerning prior bad acts committed by the appellants during the state's case in chief. The court held a hearing outside of the presence of the jury and ruled that the prosecutor would be allowed to have Chief David Smith testify about two incidents of prior bad acts concerning Luellen and one incident concerning McKinnie. The court ruled that these incidents involved material

issues as to intent, lack of mistake, and "a common scheme or plan...."

During the case in chief, Smith did testify concerning these prior bad acts. The first incident was an August 1986 case involving Luellen. Smith testified that a vehicle in which Luellen was a passenger was stopped by Smith and a Bolivar Police officer. Upon searching Luellen, Smith found cocaine in his right pants pocket. A plastic scales containing cocaine residue was also found. There was no testimony as to whether or not Luellen was convicted of a drug offense.

The second incident involved a matter that occurred in December 1989 involving McKinnie. After executing a search warrant of McKinnie's residence in Grand Junction, cocaine was found. Two quantities "about the size of a quarter" were found. The third incident occurred in September 1990 involving Luellen. Executing a search warrant of Luellen's residence, officers found marijuana and other drug paraphernalia in his home. As to these last two incidents, there was no testimony concerning whether or not the appellants were convicted of drug-related crimes.

The appellants argue that the trial judge committed reversible error in admitting the evidence of their prior wrongs and bad acts as substantive evidence under Rule 404(b) of the Tennessee Rules of Evidence. They argue that the prior acts are too remote and that they are not relevant to the issue of intent or to the issue of absence of mistake. They also argue that the probative value of this evidence is far outweighed by the danger of unfair prejudice.

The state argues that the decision to admit or exclude evidence is left to the sound discretion of the trial judge and that his discretion should not be disturbed unless it has been arbitrarily exercised. *See State v. Hawk*, 688 S.W.2d 467, 472 (Tenn.Crim.App. 1985). The state contends that the record demonstrates that the learned trial judge properly exercised his discretion in finding this evidence admissible.

The trial court informed counsel that it would instruct the jury to consider the evidence of these prior crimes on the issues which had previously been delineated by it, namely, intent and lack of mistake. Although the trial court's instructions are not in this record for our review, this Court presumes that the court abided by its intended announcement. The state argues that the limiting instructions given by the trial judge cure any error that might exist as a result of erroneous admission of evidence. *See State v. Tyler*, 598 S.W.2d 798, 802 (Tenn.Crim. App.1980).

In addition, the state asserts that the evidence of the prior wrongs and bad acts is admissible because it meets the requirements of Rule 404(b) and is relevant to a contested issue in the case. Furthermore, the state argues that the probative value of the evidence outweighs any prejudice to the appellants.

Rule 404(b) provides:

**(b) Other Crimes, Wrongs, or Acts.—** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and

(3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn.R.Evid. 404(b).

Rule 404(b) was drafted in accordance with the Supreme Court's ruling in *State v. Parton*, 694 S.W.2d 299 (Tenn.1985). The rule establishes procedures which the trial court must use in deciding whether evidence should be admitted or excluded. Only in an exceptional case will another crime, wrong, or bad act be relevant to an issue other than the accused's character. Such exceptional cases include identity, intent, motive, opportunity, or rebuttal of mistake or accident.

Ultimately, the trial court must balance the probative value of the evidence against any unfair prejudice to the appellant. If the unfair prejudice outweighs the probative value or is dangerously close to tipping the scales, the court must exclude the evidence despite its relevance to some material issue other than character.

 In the present case, the evidence of the prior wrongs was introduced to show intent and lack of mistake pursuant to Rule 404(b). Because the appellants contended they had no knowledge that the cocaine was in the possession of the juvenile Williams, the state introduced evidence of three prior incidents involving drugs to prove that this event did not take place by pure chance. Evidence relating to appellants' actual knowledge of the cocaine is relevant to the case.

 Even when evidence is found to be relevant to a material issue, it must also meet the balancing test of Rule 404(b)(3) before being admitted into evidence. In this case, testimony from Mickey Williams and Hughland Lake concerning the alleged incident make the probative value of the three prior incidents slight in comparison to the prejudicial effect that resulted. As such, the trial court erred in admitting the evidence. The state contends, however, that this constitutes harmless error and therefore the judgment should be affirmed. We respectfully disagree.

Despite the state's argument, we believe that the wrongful admission of the prior convictions constituted harmful error. As our Supreme Court concluded in *State v. Roberts,* when it adopted the language of our colleague Judge Dwyer:

> When the prior conviction was shown, it may have settled all questions for the jury, allowing them to conclude that because *he did it once, more than likely he did it again.*

703 S.W.2d 146, 147 (Tenn.1986) (Emphasis in original).

We are of the opinion that when the state was permitted to introduce the prior bad acts via the testimony of Chief Smith, the chances of either appellant receiving a fair trial became remote. *See* U.S. Const.Amend. V and XIV; Tenn. Const. Art. I, §§ 6 and 8. This issue is sustained. Upon retrial the evidence of these prior bad acts will be excluded.

## CONCLUSION

The judgment of the trial court is reversed. The case is remanded to the trial court for a new trial consistent with this opinion.

SCOTT, P.J., and PEAY, J., concur.