IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 2, 2010

**STATE OF TENNESSEE v. DONALD MICKENS**

**Direct Appeal from the Criminal Court for Shelby County**
**Nos. 07-01695-96, 07-01701      James C. Lammey, Jr., Judge**

———————————

**No. W2009-00586-CCA-R3-CD  - Filed July 8, 2010**

———————————

Defendant-Appellant, Donald Mickens, was convicted by a Shelby County jury in case numbers 07-01695 and 07-01696 of the sale of cocaine, possession with intent to sell cocaine, and possession with intent to deliver cocaine, Class C felonies. In case number 07-01701, Mickens was convicted by a Shelby County jury of facilitation to commit the offense of sale of cocaine, facilitation to commit the offense of possession with intent to sell cocaine, and facilitation to commit the offense of possession with intent to deliver cocaine, Class D felonies. In case number 07-01695, the trial court merged the possession with intent to deliver cocaine conviction with the possession with intent to sell cocaine conviction and sentenced Mickens as a Range II, multiple offender to two concurrent nine-year sentences in the Tennessee Department of Correction. In case number 07-01696, the trial court again merged the possession with intent to deliver cocaine conviction with the possession with intent to sell cocaine conviction and sentenced Mickens as a Range II, multiple offender to two concurrent nine-year sentences in the Tennessee Department of Correction. In case number 07-01701, the trial court merged the facilitation to commit the offense of possession with intent to deliver cocaine with the facilitation to commit the offense of possession with intent to sell cocaine and sentenced Mickens as a Range II, multiple offender to two concurrent seven-year sentences in the Tennessee Department of Correction. The court ordered Mickens to serve his sentences in case number 07-01695, 07-01696, and 07-01701 consecutively, for an effective sentence of twenty-five years at thirty-five percent in the Tennessee Department of Correction. On appeal, Mickens argues that the trial court erred in admitting evidence of several prior bad acts involving drugs. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**.

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JERRY L. SMITH and J. C. MCLIN, JJ., joined.

Ryan Wiley, Memphis, Tennessee, for the Defendant-Appellant, Donald Mickens.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; William L. Gibbons, District Attorney General; and Stacy McEndree, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

This case concerns three undercover drug purchases involving Mickens that occurred on January 24, 2007, January 25, 2007, and January 26, 2007.

On January 24, 2007, Officers Christopher Oslanzi and Michael Stewart of the Memphis Police Department arranged an undercover drug purchase at the McDonald's on Austin Peay Highway in Memphis, Tennessee. The two officers had an "unwilling informant," Douglas Stafford, contact Mickens using a cell phone belonging to one of the officers. Mickens arrived at the location in an early 1990's model green Cadillac. The undercover officers gave Stafford the organized crime money to buy the drugs. Both officers observed Stafford give Mickens the money and then saw Mickens give the narcotics to Stafford, who then relinquished the drugs to Officer Oslanzi. Officer Oslanzi stated that Mickens was not visible in the surveillance video taken on January 24, 2007, because of the small concealed video camera they used in undercover operations. Officer Stewart confirmed that a 1994 Cadillac with license number 708 LJK had been registered to Mickens on February 19, 2004.

On January 25, 2007, Officers Oslanzi and Stewart arranged another undercover drug purchase involving Mickens at a BP gas station on Stafford Road near Covington Pike in Memphis. The officers had obtained Mickens' telephone number the previous day when Douglas Stafford had contacted him. The officers called Mickens and arranged a second controlled drug purchase. Mickens arrived at the gas station in a Dodge Intrepid with Willie Shivers in the front passenger seat. Someone in the Intrepid motioned for Officer Oslanzi to go over to the passenger side of their vehicle. Officer Oslanzi then purchased crack cocaine from Willie Shivers, who immediately gave the money to Mickens. The officers then observed Mickens give the drugs to Shivers, who then handed them to Officer Oslanzi. Officer Stewart characterized his view of Mickens's involvement in the exchange of drugs on January 25, 2007, as a "movement of the hands." Officer Oslanzi confirmed that Mickens was visible in the surveillance video taken on January 25, 2007. Officer Stewart confirmed that a black 1998 Dodge Intrepid with license number 543 LWK had been registered to Mickens on November 27, 2006.

On January 26, 2008, Officers Oslanzi and Stewart called Mickens to arrange a third undercover drug purchase at the Kmart at Austin Peay Highway in Memphis. When Mickens arrived at the Kmart in the Dodge Intrepid, Officer Stewart exited the driver's side of his undercover vehicle and walked over to Mickens' driver side window, where he gave Mickens organized crime funds, and Mickens gave him crack cocaine. Shivers was again present in the passenger seat during this controlled buy. Also, on January 26, 2008, Officer Oslanzi identified Mickens in a photographic lineup as the individual involved in all three of the January 2007 drug transactions. Officer Oslanzi stated that Mickens was not visible in the surveillance video taken on January 26, 2007.

Following Mickens' convictions in case numbers 07-01695, 07-01696, and 07-01701, the trial court imposed an effective sentence of twenty-five years at thirty-five percent in the Tennessee Department of Correction. Mickens filed a timely motion for new trial, which was denied by the trial court. Mickens then filed a timely notice of appeal.

## ANALYSIS

**Admissibility of Mickens' Other Acts.** Mickens argues that the trial court erred in admitting his prior acts involving drugs. In response, the State argues that the trial court did not abuse its discretion in admitting this evidence. Specifically, it contends that the probative value of Mickens' prior bad acts outweighed the danger of unfair prejudice because the prior bad acts were relevant to prove Mickens's intent and guilty knowledge regarding the offenses in the instant case. Furthermore, the State argues that the prior bad acts were related to the March 4, 2000 offense that Mickens committed with William Shivers, his co-defendant, in six of the nine offenses at issue in this case.

Tennessee Evidence Rule 404(b) governs the admissibility of evidence of other crimes, wrongs, or acts committed by a defendant. Rule 404(b) states:

> **(b) Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:
>
> (1) The court upon request must hold a hearing outside the jury's presence;
>
> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;

(3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and

(4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b).

Assuming a trial court substantially complies with the requirements of Rule 404(b), we will review the trial court's determination for an abuse of discretion. State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997). However, if a trial court fails to substantially comply with the requirements of the rule, then the trial court's decision is not entitled to deference by the reviewing court. Id.

"Rule 404 was patterned in great measure on State v. Parton, 694 S.W.2d 299 (Tenn. 1985), wherein our supreme court ruled that evidence of other crimes is generally inadmissible." State v. McCary, 119 S.W.3d 226, 243 (Tenn. Crim. App. 2003), perm. to appeal denied (Tenn. July 7, 2003). Rule 404 "establish[es] that character evidence cannot be used to prove that a person has a propensity to commit a crime." Id. (citing Tenn. R. Evid. 404(b); State v. Adkisson, 899 S.W.2d 626, 645 (Tenn. Crim. App. 1994)). Trial courts should take a "restrictive approach [to] 404(b) . . . because 'other act' evidence carries a significant potential for unfairly influencing a jury." Neil P. Cohen et al., Tennessee Law of Evidence § 4.04[8][e] (4th ed. 2000). The more similar the conduct or act to the crime for which the defendant is on trial, the greater the potential for a prejudicial result. McCary, 119 S.W.3d at 243 (citing State v. Bordis, 905 S.W.2d 214, 232 (Tenn. Crim. App. 1995), perm. to appeal denied (Tenn. July 10, 1995)). Other crimes, wrongs or acts are admissible under Rule 404(b) when relevant to an issue other than the defendant's character, such as intent, motive, identity, common scheme or plan, or absence of mistake. Id.

**Trial.** In this case, there were two proffers of evidence by the State. The first proffer occurred prior to the beginning of opening statements and concerned prior bad acts committed by Mickens and Young, another co-defendant. The State called Officer Chris Oslanzi to the stand in a hearing outside the presence of the jury.

During this offer of proof, Officer Oslanzi testified that he was an officer with the Organized Crime Unit of the Memphis Police Department. He stated that he conducted three undercover drug purchases involving Mickens on January 24, 25, and 26, 2007. In addition, Officer Oslanzi stated that he saw Mickens twice on August 6, 2008, during undercover drug purchases. He first saw Mickens at 11:45 a.m. on August 6, 2008. A confidential informant had called Mickens for the purpose of arranging a drug buy for Officer Oslanzi. The

-4-

informant arranged to meet Mickens at a house on Rawdon Street. Officer Oslanzi stated that he got within three to five feet of Mickens during the drug purchase on Rawdon Street and observed Mickens exchange a substance that later tested positive for cocaine. The second time Officer Oslanzi saw Mickens was at 12:45 p.m. on August 6, 2008. He stated that another defendant, Michael Young, used the officer's cell phone to call Mickens. When Mickens arrived, Officer Oslanzi gave the organized crime money to Young, who then gave it to Mickens. Officer Oslanzi saw Mickens give the powder cocaine to Young, who then gave it to Officer Oslanzi. A few days later on August 14, 2008, Officer Oslanzi saw Mickens again. Officer Oslanzi met a women who phoned Mickens to buy a specific amount of drugs at Well Station Road and Reed Avenue in Memphis. When Mickens arrived, Officer Oslanzi stated that he believed Mickens recognized him from the previous drug purchases. As Mickens was attempting to flee the scene, he ran into a police car, and the other officers followed him.

During cross-examination, Officer Oslanzi stated that there were surveillance tapes of the incidents on January 24, 25, and 26, 2007, but the only surveillance tape that showed Mickens was the one from January 25, 2007. He also stated that there were surveillance video tapes made of the drug transactions with Mickens during the two incidents on August 6, 2008, and the incident on August 14, 2008. However, Officer Oslanzi stated that Mickens could not be seen or heard on these tapes.

During a bench conference, defense counsel claimed that he needed to see the surveillance tapes from the August 2008 incidents involving Mickens. In response, the State argued that Rule 404(b) does not require that the State present the surveillance tapes in order to establish clear and convincing proof of the prior bad acts. The trial court agreed that the tapes were not necessary to establish clear and convincing proof of Mickens' prior bad acts. However, the court told the State that the surveillance tapes should be made available to defense counsel.

At the conclusion of Officer Oslanzi's offer of proof, the court determined that the August 6, 2008 and August 14, 2008 incidents were admissible under Rule 404(b):

> Under 404(b), I think [that Mickens' prior bad acts from August 6, 2008 and August 14, 2008 as testified to by Officer Oslanzi are] just entirely admissible. I think [these prior acts are] extremely relevant to the issue of identity and also of guilty knowledge. And especially as [Mickens] fled the scene upon seeing the officer that had been involved in the previous [sales] or buys or whatever you want to call them back in January of '07. So I think [these prior acts are] highly probative of those two things. And I think that [their] probative value far outweighs the danger of unfair prejudice. So as far

as the August [6, 2008] event[s] that occurred [at] 11:45 a.m. and 12:45 p.m. [and the incident in which Mickens fled the scene on August 14, 2008], I am going to rule that they are admissible in evidence in this case under 404(B).

After the State's offer of proof involving the testimony from Officer Oslanzi, both sides presented opening statements. During opening statements, the defense told the jury that Willie Shivers was responsible for committing the offenses in this case:

The proof will show that Willie did it. Willie did it. Willie Shivers. Willie Shivers is a drug addict, a drug user. But he works as many drug users do and he works for Mr. Mickens [at] Big D. . . Appliances. Big D as in Big Donald [Mickens]. . . . Sometimes Willie goes and does the jobs. Sometimes Mr. Mickens goes out and does the work and they have several different vehicles. And those vehicles are registered and licensed to Mr. Donald Mickens.

So when apparently Willie Shivers was buying and doing whatever he does with drugs, the vehicle that was seen at the locations where these transactions apparently took place, were in vehicles that belonged to Mr. Mickens and were therefore easily traceable back to Mr. Mickens because once the officer had the number on the tag, it wasn't difficult for the officers to check their [databases], check the D.M.V. [database] and get not just a name and address but a photograph.

Following opening statements, the State presented testimony from Officers Michael Stewart, Anthony Godwin, and Jeff Dennison during its case-in-chief. Officer Dennison testified that on August 14, 2008, a felony warrant for Mickens' arrest had been obtained, and Officer Oslanzi had arranged a drug purchase with Mickens at Well Station and Reed Road so that other officers could arrest Mickens. Mickens arrived at the scene with Shivers in the front passenger seat of his vehicle. Once Mickens realized the officers were going to arrest him, he attempted to flee the scene in his vehicle and damaged Officer Dennison's patrol car. Officer Dennison stated that the officers on the scene chased Mickens through a neighborhood, where he crashed his car in a ditch and was subsequently arrested. Following this testimony, the parties had a bench conference wherein defense counsel informed the State that he had subpoenaed Willie Shivers to testify at trial. This prompted the following discussion between the State, defense counsel, and the trial court regarding the admissibility of other prior acts involving Mickens and Shivers:

[The State]:                    And Judge, after [defense counsel's] opening I'll just go ahead and warn the Court and I guess [defense counsel] as well, that based on what he told the jury that

it was Willie Shivers that did it, I feel it [necessary to] put the Court and [defense counsel] on notice, that there are several cases, not just the new case August of – well, at the point that the warrant was served on August [14], 2008 when [Mickens] crashed into Officer Dennison's vehicle, Willie Shivers was in the vehicle with him. But aside from that, some of his prior felony arrests, I think actually he was – Mr. Shivers was there on both of them. But I know he was there on the one in 2001 when he admitted to making his money by doing and conducting his business out of the location where they found all the drugs.

[Defense Counsel]: What a minute. Who is –

[The State]: Mr. Shivers. Your client. And Mr. Shivers was also arrested at that location at that house. They both were. And they were both convicted of felonies. So in addition to the cases that Mr. Shivers has out of this court regarding . . . this indictment, some of them with [Mickens] and [some of them] not [with Mickens], the[re] are two or three or four cases in looking back in Mr. Mickens['s] history where Mr. Shivers is with him when he's selling drugs. And I think that's going to be relevant and come in for guilty knowledge if he tries to get into Mr. Shivers. I don't think it's just going to be the new case and (indiscernible). I think every case where Mr. Shivers is selling drugs and Mr. Mickens [is with him is relevant because] Mr. Mickens knows that Mr. Shivers is not just working for him. He's selling drugs. They're together when they're doing it. I think those are all going to be coming in.

. . . .

The Court: All right. Well, that will be something else to think about under 404(B) to me, as being substantive proof. You might want to look at that, [defense counsel], [those] issues. So if you have any more issues of law,

> please get here early before eleven so we can go right to trial.

The State then provided defense counsel with Mickens' conviction regarding a March 4, 2000 incident where Mickens and Shivers were both arrested on drug charges at Mickens' place of business, Big D Appliances. Defense counsel argued that the State should not be able to put on this evidence in its case-in-chief. The trial court responded:

> [Rule] 404(B) evidence can be used in a case-in-chief to prove something other than propensity. In this instance, it's been alluded to already that it wasn't Mr. Mickens who was in fact dealing drugs. It was his co-defendant[, Willie Shivers] who was dealing drugs. And now the State has seen that they have both been convicted of dealing drugs together on a previous occasion.

The court continued, "I think it's relevant that they were arrested together on a drug case and Mr. Mickens was convicted on it." However, the court warned that he did not want the State to fully litigate the prior bad act. The court added, "[T]he admonition to the jury in the jury charge is you cannot use it to show he had a propensity to do this. You can just show it to show either intent, lack of mistake, identification, and things of that nature." In response, defense counsel argued that the admission of Mickens' prior bad acts was "extremely prejudicial." The court replied, "[B]ut I think it's highly relevant [if you are going to] allude[] to [the fact] that the co[-]defendant[, Willie Shivers,] is actually the drug dealer and [Mickens] was totally innocent, [that he] didn't know what was going on or anything. It's highly relevant to disprove that." Defense counsel complained that the Rule 404(b) material that the State had just given to him during trial amounted to a "trial by ambush." The court reminded defense counsel that he had made this 404(b) material relevant when he said in his opening statement that Willie Shivers was responsible for the crimes on trial and not Mickens. The court also added, "[T]he fact that [Mickens and Shivers] were arrested together on a drug case is highly relevant and I will allow that [under Rule 404(b)]."

In the presence of the jury, Officer Oslanzi testified that in addition to the incidents on January 24, 25, and 26, 2007, he also observed Mickens at 11:45 a.m. and 12:45 a.m. on August 6, 2008. Officer Oslanzi stated that he was with a confidential informant and Michael Young on August 6, 2008. The confidential informant called Mickens on Officer Oslanzi's cell phone and arranged to meet him at an address on Rawdon to buy $20 of crack cocaine. Mickens arrived at the location in a silver Mercury Topaz. Officer Oslanzi gave $20 to the confidential informant, who gave the money to Mickens "in a hand to hand exchange for what appeared to be crack cocaine." The informant gave this substance to Officer Oslanzi. When this substance was field-tested, it tested positive for cocaine. Officer

Oslanzi stated that he saw Mickens approximately one hour later at 12:45 p.m. on August 6, 2008. At that time, Young placed a cell phone call to Mickens to arrange a purchase of powder cocaine. They met Mickens at the same location, and Officer Oslanzi gave Young the organized crime funds for the drugs. Officer Oslanzi witnessed Young give the money to Mickens and witnessed Mickens give Young a white powder substance. When the powder substance was field-tested, it tested positive for cocaine.

Officer Oslanzi further testified that he saw Mickens again on August 14, 2008, at approximately 5:00 p.m.:

> There was an arrest warrant that was signed and issued for the two transactions that occurred on August [6, 2008]. At that time, myself, a confidential source and another female were in the vehicle. The female placed a phone call to Mr. Mickens where it was set up to where we were going to purchase more cocaine. This was supposed to take place on a certain parking lot on Well Station. And once [Mickens] arrived on the location he was to be taken into custody because of the arrest warrant.

Officer Oslanzi stated that he was in the confidential source's vehicle at the time of the arranged drug purchase with Mickens on August 14, 2008. When Mickens arrived on the scene, Officer Oslanzi stated that he believed that Mickens recognized him in the vehicle and tried to leave the area. When he saw Mickens leave the parking lot, Officer Oslanzi tried to back up to leave the area as well. An instant later, Officer Oslanzi saw that Mickens' vehicle had collided with a police car.

At this point, the trial court gave the following jury instruction regarding the incidents on August 6, 2008, and August 14, 2008:

> I'm going to go ahead and admonish the jury about a certain matter. Ladies and gentlemen, you've heard proof in this case that was [being] offered by the prosecution that the defendant may have been involved in some subsequent acts other than that for which he is on trial at this time. My order [to] you is that you may not consider this evidence of other crimes to prove his disposition to commit the crime for what he's charge[d] with on trial. In other words, you can't use it to prove his propensity to do the certain type crime that he's on trial for. The evidence which you heard that was presented that is other than what he's on trial for can only be considered for you for the limited purpose of the defendant's identity, to show the defendant's identity.

That is, this evidence may[]be considered by you if it tends to establish the defendant's identity in the case on trial. It can also be used to show the defendant's intent. That is, such evidence may[]be considered by you if it tends to establish that the defendant actually intended to commit the crime with which he is . . . presently charged. And lastly, you may consider this to – as proof of the defendant's guilty knowledge. That is, such evidence may be considered by you where guilty knowledge is an essential element of the crime charged and evidence of the other offenses tends to establish that the defendant possessed this knowledge at the time of the commission of the crime presently charged.

This evidence, other than the crimes for [which] he's charge[d] . . . , if considered by you . . . and considered by you for any purpose, it must not be considered for any purpose other than what I've just ordered you to consider it for. Okay. All right. With that being said, you may proceed.

Officer Oslanzi then stated that he had observed Mickens in six different drug transactions.

The State's second offer of proof followed Officer Oslanzi's testimony. Lieutenant Michael Bishop testified regarding a prior bad act on March 4, 2000, and from Officer Otto Kiehl regarding a prior bad act on October 9, 2006. The court stated that it wanted the State to avoid mentioning whether Mickens was convicted of these two prior acts but felt that the evidence provided by these two officers was relevant because it showed a "nexus" between Mickens and Willie Shivers. Defense counsel objected to the admissibility of this evidence because it violated Mickens' right against double jeopardy and argued that Willie Shivers had already been subpoenaed by the defense and was available to testify about these two prior incidents. The court stated its belief that this evidence was admissible:

. . . I just think it's highly probative and relevant to show the nexus between these two individuals, Number 1. And to show lack of mistake, intent, and . . . guilty knowledge of course. I think that's part of – out of the ones that are in the . . . pattern jury instructions, there is nothing that would indicate a nexus between the two. But then, again, I guess that could be equated with guilty knowledge. . . .

The State added that defense counsel's questions to the jury during voir dire "indicated . . . that [Mickens'] defense was going to be that [the police identified] the wrong guy. That it wasn't the defendant [that committed these crimes]. The State also argued that defense counsel claimed in its opening statement that Mickens was not aware of the fact that his employee, Shivers, conducted drug deals in vehicles owned by Mickens. The State asserted

-10-

that the proof of the prior bad acts from March 4, 2000, and October 9, 2006, would show that Mickens and Shivers were involved in the drug deals together. The court felt that it was proper to limit the proof regarding the March 4, 2000 incident to the fact that Mickens and Shivers were arrested together.

During the State's offer of proof, Lt. Michael Bishop testified that on March 4, 2000, he received a call to go to Big D's appliance store at 1344 Jackson Avenue in Memphis. He stated that Mickens allowed him to enter the business and gave him permission to search the premises. During the search, he discovered "several rocks of crack cocaine in the back of a battery charger and . . . several bags of powder cocaine hidden in a couch and $6,000 in cash." Lieutenant Bishop stated that $2000 of the money recovered during the search was found on Mickens' person. He also stated that Willie Shivers was found asleep on a couch in one of the rooms of the business. At the conclusion of his search, Lt. Bishop arrested Mickens, Mickens' wife, Willie Shivers, and another man. Lieutenant Bishop identified Mickens as the individual who allowed him to enter the business. When the substances recovered during the search were field-tested, they tested positive for cocaine.

Following this testimony, the trial court concluded that Lt. Bishop's testimony regarding the March 4, 2000 incident was "material, highly probative to show that . . . this was not a mistake. [That Mickens'] intent [was] to sell [the cocaine]. And [the State has] a right to [present this evidence in] their case-in-chief. They don't have to wait until rebuttal." The court stated that the proof of the March 4, 2000 crime was "clear and convincing" and that the prior act was "highly probative and [the probative value was] not outweighed by the danger of unfair prejudice" before determining that the evidence regarding the March 4, 2000 incident was admissible.

Also during the State's offer of proof, Officer Otto Kiehl testified that he responded to a call on October 9, 2006, regarding a complaint on Weiner Street in Memphis. Once he arrived at the location, he stopped a 1997 Ford Explorer. As Officer Kiehl and his partner approached the vehicle, a white male immediately jumped out of the vehicle and ran away from them, and they were unable to pursue him. As Officer Kiehl pulled up behind the Explorer, "a package . . . [was] thrown out of the passenger side of the vehicle." He recovered the package and identified a "white powdery substance" that appeared to be cocaine and a "[s]mall solid white substance" that appeared to be crack cocaine, as well as two different kinds of pills. Officer Kiehl stated that Mickens was in the driver's seat, and Shivers was a passenger in the Explorer. Officer Kiehl stated that he searched Mickens and found between $500 and $1000 of cash on his person. Officer Kiehl identified Mickens as the driver of the vehicle. During cross-examination, Officer Kiehl admitted that Shivers could have just as easily thrown the drugs out of the car as Mickens. The court determined that proof of this incident was "clear and convincing." The court also found that the October

9, 2006 incident was "highly probative of . . . the nexus between [Mickens and Shivers], the intent, guilty knowledge." In addition, the court felt it was probative of a lack of mistake or accident.

Lieutenant Bishop and Officer Kiehl testified to the March 4, 2000 and October 9, 2006 incidents similarly in the presence of the jury. At the conclusion of their testimony, the court gave the following instruction to the jury:

> Ladies and gentlemen, again I'm going to caution you that you heard some proof of other crimes. That if you believe it to be true, you may not consider this proof to prove . . . the defendant's disposition or propensity to commit the crime[s] that he's on trial for. Again, I will tell you that this evidence may only be considered by you for the limited purpose of determining whether it provides the defendant's intent. That is, such evidence may be considered by you if it tends to establish that a defendant actually intended to commit the crime with which he is presently charged; and has guilty knowledge, that is, such evidence may be considered by you where guilty knowledge is an essential element of the crime charged and evidence of the other offenses tends to establish the defendant possessed this knowledge at the time of the commission of the crime presently charged or the defendant's identity. That is, such evidence may be considered by you that tends to establish the defendant's identity in the case at trial.
>
> I will also tell you again that this evidence – evidence of other crimes, if considered by you for any purpose, must not be considered for any other purpose other than that specifically stated before.

The State rested, and the defense did not present any proof at trial. During the jury charge, the court defined the indicted offenses, as well as all lesser included offenses, including the offense of simple possession or casual exchange:

> Any person who commits the offense of simple possession or casual exchange is guilty of a crime. For you to find the defendant guilty of this offense, the State must have proven beyond a reasonable doubt the existence of the following essential elements: That the defendant either intentionally, knowingly or recklessly possessed or casually exchanged a controlled substance; and that the substance was cocaine, a controlled substance. Cocaine is a Schedule II controlled substance.

During the jury charge, the court also discussed the evidence of Mickens' other crimes:

If from the proof you find that the defendant has committed crimes other than that for which he is on trial, you may not consider such evidence to prove his disposition to commit such a crime as that on trial.

This evidence may only be considered by you for the limited purpose of determining whether it provides: The defendant's identity; that is, such evidence may be considered by you if it tends to establish the defendant's identity in the case on trial; the defendant's intent; that is, such evidence may be considered by you if it tends to establish that the defendant actually intended to commit the crime with which he is presently charged; guilty knowledge; that is, such evidence may be considered by you where guilty knowledge is an essential element of the crime charged and evidence of the other offenses tends to establish that the defendant possessed this knowledge at the time of the commission of the crime presently charged. Such evidence of other crimes, if considered by you for any purpose, must not be considered for any purpose other than that specifically stated.

**A. Incidents on August 6, 2008, and August 14, 2008.** The record shows that the trial court properly conducted a hearing regarding these acts outside the jury's presence. We note that this hearing took place prior to trial. The court determined that the material issue other than conduct conforming with a character trait existed, namely that the evidence of these incidents was relevant to the issues of identity and guilty knowledge regarding the offenses on trial. The trial court found that Mickens' acts involving drugs on August 6, 2008, and August 14, 2008, were proven by clear and convincing evidence. Finally, the court determined that the probative value of Mickens' acts on these dates outweighed any unfair prejudice. Because the trial court substantially complied with the requirements of Rule 404(b) in considering the incidents on August 6, 2008, and August 14, 2008, we will review the court's determination for an abuse of discretion. See DuBose, 953 S.W.2d at 652. In conducting our review, we recognize the greater likelihood of a prejudicial result when, as here, the acts are nearly identical to the offenses for which a defendant is on trial. See McCary, 119 S.W.3d at 243.

Here, the trial court determined at the conclusion of Officer Oslanzi's offer of proof that the incidents on August 6, 2008, and August 14, 2008, were admissible under Rule 404(b). Although Mickens argues that the trial court erroneously admitted this prior act evidence "as a preemptive counter" to the defense's statement in its opening that "Willie did it," we conclude that this argument is irrelevant in this instance because the trial court determined, in a jury-out hearing prior to the beginning of trial, that the incidents on August 6, 2008 and August 14, 2008 were admissible for the purpose of identity and guilty knowledge or intent. In other words, the trial court determined that the August 6, 2008 and

August 14, 2008 incidents were admissible prior to opening statements. Unlike Rule 404(a), which permits the prosecution to rebut character evidence of a pertinent character trait offered by the accused, Rule 404(b) does not limit the admission of other act evidence to rebuttal. Rule 404(b) states only that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait" but that "[i]t may, however, be admissible for other purposes." Tenn. R. Evid. 404(b). Moreover, the Advisory Commission Comments provide a detailed explanation regarding the operation of Rule 404(b):

> The Commission drafted Part (b) in accord with the Supreme Court's pronouncements in State v. Parton, 694 S.W.2d 299 (Tenn. 1985). There the Court established precise procedures to emphasize that evidence of other crimes should usually be excluded. In the exceptional case where another crime is arguably relevant to an issue other than the accused's character– issues such as identity (including motive and common scheme or plan), intent, or rebuttal of accident or mistake–the trial judge must first excuse the jury. Then the judge must decide what material issue other than character forms a proper basis for relevancy. If the objecting party requests, the trial judge must state on the record the issue, the ruling, and the reason for ruling the evidence admissible. Finally, the judge must always weigh in the balance probative value and unfair prejudice. If the danger of unfair prejudice outweighs the probative value, the court should exclude the evidence even though it bears on a material issue aside from character. Finally, according to Parton, the trial judge must find that the evidence is "clear and convincing" that the defendant committed another crime.

Tenn. R. Evid. 404(b), Advisory Comm'n Comment. Neither the language of the rule nor the comment to the rule requires that 404(b) evidence is admissible only to rebut evidence offered by the defense. The content of this rule makes sense in light of the frequency that a defendant chooses to put on no proof at trial. It would be unreasonable to assume, as Mickens suggests, that 404(b) evidence could never be admitted in situations where the defendant chooses not to put on any proof after its opening statement. Clearly, Rule 404(b) allows for the State to present prior act evidence in its case-in-chief after satisfying the four-part test within the rule. See Tenn. R. Evid. 404(b). Once the trial court determines that the prior bad act evidence satisfies this four-part test, as it did in this case prior to the start of trial, the State may present this prior act evidence in its case-in-chief without regard to the evidence presented by the defense. This is reasonable given that the State may not get an opportunity to present rebuttal evidence if the defendant, as in the case here, chooses not to present any evidence at trial.

-14-

State v. Kevin Rudd, No. W2005-02814-CCA-R3-CD, 2007 WL 2700077 (Tenn. Crim. App., at Jackson, Sept. 13, 2007), and State v. Reginald C. Johnson, No. 03C01-9801-CC-00006, 1999 WL 222547, at *2 (Tenn. Crim. App., at Knoxville, Mar. 17, 1999), illustrate the fine line between proof offered to show propensity and proof offered to show intent, motive, identity, common scheme or plan, or absence of mistake. Review of these two cases provides clarity in resolving the issues raised by Mickens in this appeal. In Johnson the jury viewed a video recording of an undercover officer's drug transaction with a person wearing a white shirt and white cap whose face was not clearly depicted. Reginald C. Johnson, 1999 WL 222547, at *2. The undercover officer identified the individual in the recording as the defendant. Id. The trial court then conducted a 404(b) hearing regarding a second video recording of the undercover officer's second visit to the same location two hours later. Id. During this jury-out hearing, the court viewed the second video recording and determined that it showed a clearer view of the face of the person wearing the white shirt and white cap. Id. The undercover officer again identified the individual in the second video recording as the defendant. Id. At the conclusion of the jury-out hearing, the trial court determined that the second video recording was admissible on the issue of identity. Id. The 404(b) hearing in the Johnson case occurred during the State's case-in-chief. Id. at *3. However, once the trial court made the determination that the probative value of this evidence on the issue of identity outweighed the danger of unfair prejudice, the evidence in the second video recording was admissible regardless of the defense theory offered by the defendant.

In contrast to Johnson, Rudd presents a very different 404(b) scenario. Kevin Rudd, 2007 WL 2700077. In Rudd, a first degree murder case, the State filed a pre-trial motion to determine the admissibility of the defendant's involvement in the 1991 shooting death of the defendant's girlfriend, Stephanie Truttle. Id. at *3. The State argued that the evidence of the 1991 shooting "was admissible to show premeditation and that the shooting alleged in the current indictment [for first degree murder] was not accidental." Id. The trial court conducted a pre-trial 404(b) hearing to determine whether the prior shooting was admissible. Id. During this hearing, the State presented testimony from Julius Tate, a criminal investigator for the Coldwater, Mississippi Police Department, who had investigated the 1991 shooting of Truttle. Id. Officer Tate testified that Truttle died from a gunshot wound to the head that entered at her right cheek. Id. He stated that the defendant was the main suspect. He also said that when the police interviewed the defendant, the defendant told them that he and Truttle had been arguing and that at some point during this argument, he shot Truttle in the head. Id. Officer Tate stated that the defendant later entered a guilty plea to manslaughter. Id. At the conclusion of the 404(b) hearing, the trial court determined "that a material issue exists other than conduct conforming with a character trait of the defendant, that of rebuttal or absence of accident or mistake. However, unless this theory is in fact offered by the defense, the danger of unfair prejudice which attaches to this prior conviction

-15-

or bad act would outweigh its probative value." Id. During opening statements, defense counsel set a scene for the jury in which the defendant and the victim were struggling over the gun and the gun fired in the victim's face as the defendant fell away from the victim. Id. at *4. At this point, the State renewed its motion to present evidence of the 1991 shooting to rebut the defense's theory of accident. Id. The trial court found that "the evidence was admissible to negate an innocent, negligent, reckless, or heat of passion state of mind and that the probative value of the evidence was not outweighed by the danger of unfair prejudice." Id. Officer Tate then testified about the 1991 shooting of Truttle in the presence of the jury at trial. Id. Then, the trial court gave a curative instruction to the jury. Id. at *4-5. On appeal, this court determined that the trial court's admission of Officer Tate's testimony regarding the 1991 shooting of Truttle was improper. Id. at *8. The court focused on the fact that the admission of Officer Tate's testimony during the State's case-in-chief was in response to the defense's opening statement rather than in response to actual evidence offered by the defendant at trial. Id. at *6. As the trial court initially found, the evidence of the prior act was unfairly prejudicial and had no basis for its admission other than propensity. The court reversed the appellant's conviction and remanded the case for a new trial. Id. at *7.

We further distinguish the Reginald C. Johnson case from the Rudd case. In Johnson, when the prior act evidence passed the 404(b) test, the trial court determined that it was material on the issue of identity; therefore, this prior act evidence was admissible regardless of the defense theory offered by the defendant. Reginald C. Johnson, 1999 WL 222547, at *2. However, in Rudd, the prior act evidence failed the 404(b) test, and the trial court determined that it was unfairly prejudicial to the defendant. Kevin Rudd, 2007 WL 2700077, at *3. At that point, the evidence could only be admitted on rebuttal after actual proof was offered by the defendant. This is significant because the defense theory offered by defense counsel in the opening statement did not qualify as actual evidence for the purpose of triggering rebuttal evidence.

Here, at the close of Mickens 404(b) hearing, the trial court stated that the incidents on August 6, 2008, and August 14, 2008, were "extremely relevant to the issue of identity and also of guilty knowledge." We note that in order to obtain the convictions in this case, the State had to prove both identity and intent.

Regarding identity, the State had the burden of proving that Mickens was, in fact, the individual guilty of these crimes. In the Johnson case, this court discussed the State's burden of identifying the defendant as the perpetrator:

> We know that in any criminal case, the burden rests with the state to establish
> a defendant's guilt. No reasonable law would impose a burden upon a party

without granting that party an opportunity to carry the burden. Absent some concession by the accused, the state has the burden, and should be afforded the opportunity, of identifying the accused as the perpetrator in every criminal case.

Reginald C. Johnson, 1999 WL 222547, at *3. In this case, the trial court determined that the incidents involving Mickens on August 6, 2008, and August 14, 2008, provided probative evidence of the perpetrator's identity. See Tenn. R. Evid. 404(b)(2). Moreover, the trial court found that the probative value of these incidents outweighed any danger of unfair prejudice to Mickens. See Tenn. R. Evid. 404(b)(4). Given that the State has the burden of identifying the defendant as the perpetrator, we conclude that the trial court did not err in admitting the evidence of the August 6, 2008, and August 14, 2008, incidents to prove that Mickens was the perpetrator in this case.

Regarding intent, the State was required to prove that Mickens knowingly committed the indicted offenses or knowingly furnished substantial assistance to another individual who committed the offenses. See T.C.A. §§ 39-17-417, 39-11-403 (2006). Intent was specifically an element of each of the charged offenses. See id. Officer Oslanzi's testimony that he observed Mickens sell drugs on August 6, 2008, and observed Mickens arrive with the intention of selling drugs on August 14, 2008, was proof of Mickens' intent to commit the crimes at issue in this case. We note that the Sixth Circuit has concluded that the admission of prior act evidence may be necessary in cases involving specific intent crimes:

> In prosecuting specific intent crimes, prior acts evidence may often be the only method of proving intent. Thus, where the crime charged is one requiring specific intent, the prosecutor may use 404(b) evidence to prove that the defendant acted with the specific intent notwithstanding any defense the defendant might raise.

United States v. Johnson, 27 F.3d 1186, 1192 (6th Cir. 1994) (internal citation omitted); see also United States v. Bell, 516 F.3d 432, 444 (6th Cir. 2008) ("[T]o be probative of a defendant's present intent to possess and distribute, his prior convictions for drug distribution must be related in some way to the present crime for which the defendant is on trial."). Because most drug offenses require the State to prove that the defendant possessed drugs with intent to sell them, the State is permitted to use prior bad act evidence in proving this intent regardless of whether this issue is raised by the defense, so long as it is not unfairly prejudicial. As we previously stated, while Rule 404(a) permits the prosecution to rebut character evidence of a pertinent character trait offered by the accused, Rule 404(b) does not limit the other act evidence to rebuttal. Because the State had the burden of proving that Mickens knowingly committed the indicted offenses or knowingly furnished substantial

assistance to another individual who committed the offenses, we conclude that the trial court did not err in admitting proof of the August 6, 2008 and August 14, 2008 incidents on the issue of intent.

Finally, the trial court's instructions during trial and during the jury charge made it clear that the jury was not to consider these acts involving drugs as propensity evidence. In order to determine whether a jury instruction is proper, this court must consider the jury charges in their entirety. See Otis v. Cambridge Mut. Fire Ins. Co., 850 S.W.2d 439, 446 (Tenn. 1992). Here, the trial court informed the jury that it was not to consider the evidence of other crimes to prove Mickens' disposition to commit the offenses for which his was on trial. We must presume that the jury followed the trial court's two instructions regarding this evidence. See State v. Williams, 977 S.W.2d 101, 106 (Tenn. 1998). Accordingly, we conclude that the trial court acted within its discretion in admitting the incidents on August 6, 2008, and August 14, 2008.

**B. Incidents on March 4, 2000, and October 9, 2006.** Again, because the trial court substantially complied with the requirements of Rule 404(b) in considering the prior bad acts on March 4, 2000, and October 9, 2006, we will review the court's determination for an abuse of discretion. See DuBose, 953 S.W.2d at 652. Regarding the March 4, 2000 and October 9, 2006 incidents, the record shows that the trial court properly conducted a Rule 404(b) hearing outside the jury's presence during the State's case-in-chief. The court determined that the material issue other than conduct conforming with a character trait existed, namely that the evidence was relevant to the issues of lack of mistake, intent, and guilty knowledge. The court also found that this evidence was relevant to show the "nexus" between Mickens and Shivers. The trial court determined that the prior acts on March 4, 2000, and October 9, 2006, were proven by clear and convincing evidence. Finally, the court found that the probative value of these prior acts outweighed any unfair prejudice.

As we have already noted, in order to obtain convictions in this case, the State had to prove that Mickens knowingly committed the indicted offenses or knowingly furnished substantial assistance to another who committed the offenses. See T.C.A. §§ 39-17-417, 39-11-403. Mickens' defense centered around his claim that Willie Shivers was responsible for committing the crimes on trial. Lieutenant Bishop's testimony regarding the March 4, 2000 incident and Officer Kiehl's testimony regarding the October 9, 2006 incident were probative of Mickens' intent to commit the offenses in this case. Moreover, this testimony established that Mickens and Shivers routinely sold drugs together. See McClean v. State, 527 S.W.2d 76, 83 (Tenn. 1975) (evidence of pharmacist's prior illegal sale of controlled substance to informer admitted to establish continuing relationship and intent to commit crime). We note that the Tennessee Supreme Court has determined that "[e]vidence proving motive necessarily serves the purpose of completing the story of the crime." State v. Leach, 148

S.W.3d 42, 58 (Tenn. 2004); see also State v. Robert Hood, No. W2004-01678-CCA-R3-DD, 2005 WL 2219691, at *22 (Tenn. Crim. App., at Jackson, Sept. 13, 2005) ("Motive is a relevant circumstantial fact that refers to why a defendant did what he did."). In addition, we interpret the trial court's statement that the prior acts on March 4, 2000, and October 9, 2006, related to the "nexus" between Mickens and Shivers to mean that the prior acts were relevant to Mickens' intent and motive regarding the offenses on trial.

Finally, the trial court's instructions during trial and during the jury charge made it clear that the jury was not to consider the fact that Mickens had sold drugs before as propensity evidence. As we previously stated, in order to determine whether a jury instruction is proper, this court must consider the jury charges in their entirety. See Otis, 850 S.W.2d at 446. Here, the trial court informed the jury that it was not to consider the evidence of other crimes to prove Mickens' disposition to commit the offenses for which his was on trial. We again must presume that the jury followed the trial court's two instructions regarding this evidence. See Williams, 977 S.W.2d at 106.

Mickens also argues that the trial court abused its discretion in informing the jury that it could use Officer Kiehl's testimony "for the purpose of identity when that was clearly not a material fact addressed by their testimony." The record shows that the trial court instructed the jury that the March 4, 2000 and October 9, 2006 incidents could be considered by the jury on this issues of intent, guilty knowledge, and identity. Although the trial court included identity, perhaps inadvertently, in its jury instruction, it is clear from the record that the trial court admitted the evidence of the March 4, 2000 and October 9, 2006 incidents because it determined that these prior acts were probative of intent and guilty knowledge. Moreover, the trial court emphasized that the jury was not to consider the prior acts as propensity evidence. Therefore, if the trial court committed any error regarding the issue of identity in this instruction, the error was harmless.

In regard to the State's second offer of proof, Mickens specifically argues "the [prior bad act] evidence was allowed to show intent or lack of mistake when no evidence was offered by the defense asserting lack of intent or mistake." He claims the trial court erroneously admitted the evidence "as a preemptive counter" to the defense's statement in its opening that "Willie did it." We note that Mickens' argument and authority, in large part, mirrors that addressed concerning his first offer of proof. Therefore, based on the aforementioned authority, we conclude he is not entitled to relief.

We are also compelled to acknowledge that opening statements are not evidence:

[Opening statements] are intended merely to inform the trial judge and jury, in a general way, of the nature of the case and to outline, generally, the facts

each party intends to prove. Such statements do not amount to stipulations and certainly are not a substitute for the pleadings or for the evidence.

State v. Reid, 164 S.W.3d 286, 343 (Tenn. 2005) (quoting Harris v. Baptist Mem'l Hosp., 574 S.W.2d 730, 732 (Tenn. 1978)). Here, even without the comments of defense counsel during opening statement, we emphasize that the trial court determined that the proof of the March 4, 2000 and October 9, 2006 incidents passed the 404(b) test; therefore, this evidence was admissible. Because this prior act evidence passed the 404(b) test, there was no limitation that the State could admit this evidence only to rebut actual proof offered by the defense. In this case, the defense offered no actual proof at trial. Instead, the defense asserted in its opening statement that Shivers, a co-defendant who was not on trial, was responsible for committing the offenses in this case. Since the 404(b) hearing in this case occurred after opening statements and during the State's case-in-chief, the substance of the defense's opening was merely one of the factors the trial court could consider in determining whether the probative value of this prior act evidence outweighed the danger of unfair prejudice to Mickens. Upon review, we cannot conclude that the trial court abused its discretion in admitting the March 4, 2000 and October 9, 2006 incidents since they were relevant to issues of intent and guilty knowledge.

**C. Luellen Argument.** In addition, relying on State v. Luellen, 867 S.W.2d 736 (Tenn. Crim. App. 1992), Mickens argues that the probative value of the above "five different crimes" was slight because the State had "sufficient [other] evidence with which to bring their case before the jury." The State did not provide a response to this argument in its brief. In Luellen, Luellen, McKinnie, and a juvenile named Williams were stopped by police. Id. at 737-38. When Williams, the juvenile, was searched prior to being placed in an officer's patrol car, 32.4 grams of cocaine was found in an envelope on his person. Id. at 738. Luellen and McKinnie were arrested and charged with possession of cocaine with intent to sell or deliver. Id. On the morning of trial, the State made a motion to admit testimony regarding Luellen's two prior bad acts and to admit testimony regarding McKinnie's one prior bad act that related to drugs in its case-in-chief. Id. at 739. During a jury-out hearing, the trial court determined that the State would be allowed to present testimony from an officer regarding the prior bad acts because these acts were material to the issues of intent, lack of mistake and a common scheme or plan. Id. at 739-40. The State claimed that it introduced the three prior bad acts involving drugs because the defendants claimed that they did not know that the juvenile possessed the cocaine. Id. at 741. During the State's case-in-chief, an officer testified that Luellen voluntarily admitted to him that he and McKinnie had gone to Memphis to obtain cocaine and that they had been stopped by police on their way back home. Id. 738. Luellen told the officer that he told McKinnie to "get rid of the stuff" when they saw the police. Id. In addition, Williams, the juvenile who was arrested with Luellen and McKinnie, testified that he had asked Luellen and McKinnie

for a ride to his grandmother's house in Grand Junction, and the two men agreed. Id. Williams stated that while they were driving through Moscow, Tennessee, they saw a police car. Id. When the police car turned on its blue lights behind them, Luellen told McKinnie to get the package. Id. He said that McKinnie then put the package containing the cocaine in Williams' pocket because he believed that the officers would not search him because he was a juvenile. Id. On appeal, this court concluded that "[e]ven when evidence is found to be relevant to a material issue, it must also meet the balancing test of Rule 404(b)(3) before being admitted into evidence." Id. at 741. The court held that the trial court had erred in admitting the prior bad act evidence in light of the officer's testimony of Luellen's admission of the offense and Williams' testimony regarding the incident. Id. Specifically, this court concluded that the officer's and Williams' testimony made "the probative value of the three prior incidents slight in comparison to the prejudicial effect that resulted." Id. at 741.

Luellen is distinguishable from the instant case. Here, significantly, there is no admission by Mickens to the offenses on trial. In addition, other than the testimony of the officers, there are no other witnesses who could clarify what actually happened during these transactions. Despite the fact that the undercover officers took surveillance videotapes of the drug purchases on January 24, 2007, January 25, 2007, and January 26, 2007, only the tape from January 25, 2007 depicts Mickens. Moreover, the defense claimed in its opening statement that Willie Shivers was responsible for committing the offenses in this case. The defense further asserted during its opening that Shivers was Mickens' employee and used vehicles licensed to Mickens to commit these offenses without Mickens knowledge. Given the tenuous nature of the evidence against Mickens and Mickens' claim that his employee was responsible for the offenses, we agree with the trial court, and conclude that probative value of Mickens' prior acts involving drugs outweighed the danger of any unfair prejudice. Accordingly, the trial court did not err in admitting the five prior acts involving Mickens.

## CONCLUSION

Upon review of the record, we conclude that the trial court did not abuse its discretion in admitting evidence regarding Mickens' prior acts. The judgments of the trial court are affirmed.

_____
CAMILLE R. McMULLEN, JUDGE