# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE

Assigned on Briefs at Knoxville May 15, 2012

## STATE OF TENNESSEE v. JAMES RANDALL ROSKAM

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2010-C-2679      Cheryl Blackburn, Judge**

**No. M2011-02071-CCA-R3-CD - Filed August 20, 2012**

A Davidson County Criminal Court Jury convicted the appellant, James Randall Roskam, of aggravated robbery, a Class B felony, and the trial court sentenced him as a Range II, multiple offender to twenty years in confinement. On appeal, the appellant contends that the evidence is insufficient to support the conviction and that the State impermissibly elicited testimony from its witnesses about his prior bad acts in violation of Rule 404(b), Tennessee Rules of Evidence. Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and THOMAS T. WOODALL, J., joined.

Elaine Heard, Nashville, Tennessee, for the appellant, James Randall Roskam.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Anton Jackson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The victim, Santiago Martinez, testified at trial that in July 2010, he was homeless and living in Nashville. To make money, the victim sold The Contributor, a newspaper focusing on homeless people. The victim usually sold his newspapers at the corner of 4th Avenue and Broadway from 8:00 a.m. to about 11:00 p.m., and he always wrote his name on any five-, ten-, and twenty-dollar bills he received in case he was robbed. The victim said that on the

night of Saturday, July 17, 2010, he was selling newspapers when a man approached. The man told the victim that he was "going to collect taxes," pulled a knife, and put it against the victim's stomach. The victim felt the knife and saw that it had a stone handle. He said the knife was more than six inches long and "kind of scary." The man was wearing a dark shirt and jeans, was carrying a backpack, had a hat or bandana, and smelled of alcohol. The victim said he had seen the man one time previously when they were on a bus "going to a meal" for the homeless.

The victim testified that the man told him that "if you don't give me the money, I'm going to stick you." The victim gave the man a five-dollar bill, and the man ran west on Broadway. The victim said that as the man was fleeing, the man said, "I got some money now, I got some money now, I can go drink." The victim used his Safe Link cellular telephone to call 911. At some point, the police brought the man, who was the appellant, to the victim, and the victim identified him as the robber. The victim also identified the appellant at trial as the robber. The State showed the victim a five-dollar bill with the name "Santiago" written on it, and the victim identified it as the bill he gave to the appellant. He said that he did not give the money to the appellant in order for the appellant to buy beer and that he had no intention of drinking beer with the appellant on the night of July 17.

On cross-examination, the victim acknowledged that he testified at the appellant's preliminary hearing. When asked if he said at the hearing that he did not see the knife's handle, he stated, "It's kind of hard to remember. It's been a while now." The victim usually made one hundred to two hundred dollars per day selling newspapers. However, on July 17, 2010, he had been working all day and had only five dollars. He said that the robbery occurred about 10:30 p.m., but he acknowledged that he said at the preliminary hearing the robbery occurred about 7:30 or 8:00 p.m. He did not remember if tourists were around him at the time of the robbery. He denied that the appellant asked to "split" a pack of beer with him and said that he did not know what the appellant did with the knife after the robbery.

Officer Michael Eva of the Metropolitan Nashville Police Department (MNPD) testified that about 10:30 p.m. on July 17, 2010, he responded to the victim's robbery call. The victim and his girlfriend were present, and the victim was upset and concerned about his money. The victim was not intoxicated. The victim claimed the robber approached him, pulled a knife, demanded money, and threatened to stab him. The victim said the robber was wearing a black shirt and blue jeans and was carrying a backpack. The victim also told the officer that the robber's name was "Roscoe" and that he gave the robber a "marked" five-dollar bill. The victim later identified the appellant as the man who robbed him.

On cross-examination, Officer Eva testified that he was on bike patrol when he responded to the victim's call. He was about one-half block away from the robbery and

arrived at the scene within one or two minutes. He did not look for a knife after the robbery, and a knife was never found.

Officer Brian Theriac of the MNPD testified that he was on bike patrol on the night of July 17, 2010, and learned about the robbery. The robber had been described as a white male, who went by the name "Roscoe." The robber supposedly was wearing blue jeans and a black shirt and carrying a backpack. Officer Theriac rode along Broadway and saw the appellant, who matched the robber's description, walking over the railroad tracks just west of 10th Avenue. Officer Theriac yelled, "Roscoe," and the appellant answered, "[Y]eah, what." Officer Theriac asked the appellant where he was coming from, and the appellant said Broadway. The appellant allowed Officer Theriac to search him. The officer found a five-dollar bill marked with the victim's name and arrested the appellant.

On cross-examination, Officer Theriac testified that he did not find a knife on the appellant's person. He looked for the knife along Broadway but did not find it. The appellant did not attempt to flee from him, was not nervous or upset, and was cooperative. Officer Theriac said the appellant claimed "he was going to get beer" at the nearby gas station.

Officer Keith Holley of the MNPD acknowledged that he transported the appellant back to the corner of 4th Avenue and Broadway for a "showup." The appellant smelled of alcohol, and the victim identified him as the robber.

On cross-examination, Officer Holley testified that many people were usually at 4th Avenue and Broadway on a Saturday night, especially in the summertime. He said he did not look for a knife.

At the conclusion of the State's proof, the jury convicted the appellant of aggravated robbery, a Class B felony. After a sentencing hearing, the trial court sentenced him as a Range II, multiple offender to twenty years in confinement to be served at eighty-five percent.

## II. Analysis

### A. Sufficiency of the Evidence

The appellant contends that the evidence is insufficient to support the conviction because the victim's testimony was "wholly unreliable," the knife was never found, and the appellant did not seem nervous or upset when Officer Theriac approached him. The State claims that the evidence is sufficient. We agree with the State.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. See id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Taken in the light most favorable to the State, the evidence shows that on the night of July 17, 2010, the victim was selling newspapers. The appellant approached him, put a knife to his stomach, and demanded money. The victim recognized the appellant, knew him as "Roscoe," and gave him a five-dollar bill marked with the victim's first name. A short time later, Officer Theriac saw a man matching the robber's description. When he yelled "Roscoe," the appellant answered. Officer Theriac searched the appellant and found the marked five-dollar bill, and the victim identified the appellant at the scene and in court as the man who robbed him. Although the appellant claims that the victim's testimony was unreliable, the jury, not this court, was in the best position to assess the credibility of the witnesses. The jury obviously accredited the victim's testimony, as was its prerogative. Therefore, the evidence is sufficient to support the conviction.

### B. Prior Bad Acts

The appellant contends that the State impermissibly elicited testimony from its witnesses about his prior bad acts. The State argues that the issue has been waived and that any error does not rise to the level of plain error. We conclude that the appellant is not entitled to relief.

Before trial, the appellant filed a motion to prohibit the State's witnesses from mentioning "any other crimes Mr. Roskam is not charged with that may have occurred at any point, specifically that 'Mr. Roskam had been going around robbing homeless people.'" According to the appellant's brief, the trial court granted the motion and "gave specific instructions to the prosecution to neither mention nor elicit any information from witnesses

regarding the excluded propensity, character, bad acts material." However, the appellant did not include the transcript of the motion hearing in the appellate record.

The appellant contends that the State intentionally elicited prior bad act evidence from its witnesses three times in violation of Tennessee Rule of Evidence 404(b).[1] In the first instance, the State asked the victim if he had seen the robber previously, and the victim answered yes. The State asked him, "Did you have any other contact or interaction with the person that had robbed you?" The victim answered, "At one time I did. He was robbing on the bus." The defense objected, and the trial court ordered the jury to "[d]isregard the last statement." In the second instance, the State asked Officer Eva, "When you arrived on the scene, who all was present?" Officer Eva stated, "The victim Mr. Martinez, his girlfriend Ms. Ives. There was a second victim. I can't recall his name." The defense again objected, and the trial court told the parties to approach the bench. The State said, "Judge, I've explained to them that they could not go into that line[.]" The trial court replied, "That's two witnesses in a row." The court told the jury, "Disregard the last answer and treat it as if you had never known it." In the third instance, the State asked Officer Eva, "And once the suspect was apprehended did you recognize him, the defendant?" Officer Eva stated, "As far as past dealings, I don't think I've had any past dealings." The defense objected for a third time, and the trial court asked the parties to approach the bench. The trial court told the State, "The question was a lousy question. . . . [O]bviously there is some history." Defense counsel stated, "I mean, if this continues, I'm going to have to move for a mistrial." The trial court said, "Right. Officer Eva only answered the question asked him. And that wasn't a good question." The court instructed the jury, "Disregard the question and the answer."

Tennessee Rule of Evidence 404(b) provides, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes." Those other purposes include "identity, intent, motive, opportunity, or rebuttal of mistake or accident." State v. Luellen, 867 S.W.2d 736, 740 (Tenn. Crim. App. 1992).

In this case, the appellant alleges that the trial court granted his motion and prohibited the State's witnesses from testifying about his prior bad acts. However, as noted by the State, the appellant has failed to include the transcript of the motion hearing in the record on appeal. The appellant carries the burden of ensuring that the record on appeal conveys a fair, accurate, and complete account of what has transpired with respect to those issues that are the bases of appeal. Tenn. R. App. P. 24(b); see also Thompson v. State, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997).

---

[1]The appellant does not claim he is entitled to relief based upon prosecutorial misconduct.

Nevertheless, we will briefly address the appellant's argument. Initially, we note that the third statement, Officer Eva's response that "[a]s far as past dealings, I don't think I've had any past dealings [with the appellant]," did not make any reference to prior bad acts. Regarding the remaining two statements, that the appellant was robbing on the bus and that the robbery in question involved two victims, the defense objected after each statement, and the trial court instructed the jury to disregard the statement. Generally, we presume that a jury has followed the trial court's instructions. See State v. Butler, 880 S.W.2d 395, 399 (Tenn. Crim. App. 1994).

The appellant also did not request a mistrial. See Tenn. R. App. P. 36(a). The defendant concedes that he did not request a mistrial based upon the State's misconduct but argues that he is entitled to plain error relief because the trial court should have sua sponte declared a mistrial when the appellant brought the improper statements to the court's attention.

A mistrial should be declared in criminal cases only in the event that a manifest necessity requires such action. State v. Millbrooks, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991). In other words, a mistrial is an appropriate remedy when a trial cannot continue or a miscarriage of justice would result if it did. State v. McPherson, 882 S.W.2d 365, 370 (Tenn. Crim. App. 1994). Before plain error may be recognized, the error must be "an especially egregious error that strikes at the fairness, integrity, or public reputation of judicial proceedings." State v. Adkisson, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994); see also Tenn. R. App. P. 36(b). In Adkisson, this court listed the following factors to be considered in determining whether to address plain error: (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the issue is necessary to do substantial justice. Id. at 641-42.

Turning to the instant case, the appellant failed to include a transcript of the motion hearing, which would have included the parties' arguments, the evidence presented, and the trial court's oral findings. Therefore, the record does not clearly establish what occurred in the trial court. Moreover, the appellant objected after the statements, and the trial court instructed the jury to disregard them. Thus, the appellant has not established that a substantial right was adversely affected. Finally, defense counsel was aware of the option to request a mistrial but chose not to do so. Therefore, the appellant has not established that he did not waive the issue for tactical reasons. The appellant is not entitled to plain error relief.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE