# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs August 05, 2014

## STATE OF TENNESSEE v. BENJAMIN GUNN

**Appeal from the Criminal Court for Shelby County**
**No. 0902072      W. Mark Ward, Judge**

_____

**No. W2013-02006-CCA-R3-CD  - Filed January 30, 2015**

_____

Defendant, Benjamin Gunn, was indicted by the Shelby County Grand Jury in Count 1 with possession of more than .5 grams of cocaine with intent to sell, in Count 2 with possession of more than .5 grams of cocaine with intent to deliver, and in Count 3 with felony possession of marijuana.  Defendant was convicted as charged by a jury.  The trial court merged Count 2 with Count 1 and sentenced Defendant to 12 years' incarceration.  The trial court imposed a sentence of two years' incarceration for Count 3, to be served consecutively with Defendant's sentence for his conviction in Count 1.  In this appeal as of right, Defendant challenges the trial court's failure to exclude evidence that prior search warrants were executed on the defendant's residence.  We conclude that the trial court erred by allowing evidence of the prior searches of Defendant's residence.  Accordingly, we reverse the judgments of the trial court and remand this case for a new trial.

### Tenn. R. App. P. 3 Appeal as of Right;
### Judgment of the Criminal Court Reversed and Remanded

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which ALAN E. GLENN and ROGER A. PAGE, JJ., joined.

Andrew R. E. Plunk, Memphis, Tennessee, for the appellant, Benjamin Gunn.

Herbert H. Slatery, III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Megan Fowler and Gavin Smith, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

*404(b) hearing*

The charges in this appeal resulted from the execution of a search warrant at Defendant's home on February 29, 2008. Prior to any proof being presented at trial, the State presented a motion in limine to be allowed to introduce evidence that prior search warrants were executed at Defendant's home on August 1 and August 19, 2007. The State argued that the evidence was relevant to prove Defendant's intent to sell or deliver, as well as to rebut a possible defense of mistake or accident if Defendant presented proof that the drugs were for his personal use. In its argument to the court, the State emphasized that the prior search warrants were executed six months prior to the search warrant leading to the charges in this case.

The trial court permitted the State to introduce evidence of the search warrants executed on August 1 and August 19, 2007, finding that there was clear and convincing evidence of the incidents, that they were relevant to prove Defendant's intent to sell and Defendant's actual possession of the drugs, and that the probative value was not outweighed by the danger of unfair prejudice.

*Trial*

On August 1, 2007, Detective Kittrel Robinson of the Memphis Police Department executed a search warrant at Defendant's residence based on information obtained from a confidential informant. Detective Robinson testified that Defendant was not the "target" of the search warrant executed on August 1, 2007. He testified that Defendant owned the residence to be searched but that the confidential informant had purchased drugs from Trennel Smith. When Detective Robinson entered the residence to execute the search warrant, he observed Defendant "grabbing the drugs off the table and running to the bathroom[,]" where Defendant tried to dispose of crack cocaine in the toilet. Officers recovered marijuana and crack cocaine.

Detective Robinson executed another search warrant at Defendant's residence on February 29, 2008. Detective Robinson testified that Defendant was the "target" of that search warrant. Detective Robinson conducted surveillance of the residence prior to the execution of the search warrant. He testified that he had observed Defendant meet people at the door. Visitors would enter the residence for one minute or less and then leave. Detective Robinson testified that he observed more traffic to the residence than was typical in the area where the house was located.

When Detective Robinson entered the house on February 29, 2008, Defendant ran to a bedroom in the back of the house. Detective Robinson chased Defendant and saw Defendant dropping rocks of crack cocaine as he ran. Detective Robinson apprehended Defendant in the bedroom as Defendant was throwing powder cocaine from his hand. Police recovered approximately eight grams of crack cocaine that Defendant dropped while running and one gram of powder cocaine. The crack cocaine was individually packaged, which is consistent with resale. Detective Robinson testified that marijuana was found on a table in the living room. A Tennessee Bureau of Investigation lab report indicated that the weight of the marijuana was 7.12 grams. On cross-examination, Detective Robinson testified that "a pipe" was found on the bed where he apprehended Defendant. He also testified that police did not find any cash on Defendant's person or in the house.

Memphis Police Officer Charles Teeters assisted in conducting surveillance of Defendant's residence on August 19, 2007. Officer Teeters observed "foot traffic come to the residence, stay for a brief period of time and then leave[,]" which was consistent with street level drug sales. Officer Teeters observed individuals knock on the front door, enter the residence, and stay for a short period of time. He saw the individuals exchange items with someone inside the residence. Officer Teeters conducted a "knock and talk." He and other officers entered the residence, and Officer Teeters noticed a "strong odor of burnt marijuana in the air." He heard "running in the back and voices in the back [of the house]." Officer Teeters conducted a protective sweep of the residence in order to prevent the destruction of evidence or the individuals inside the residence arming themselves. Officer Teeters found Defendant in a back bedroom.

Officer Teeters subsequently obtained a search warrant and found marijuana and 3.6 grams of crack cocaine and approximately one ounce of marijuana inside "a false bottom container" in the bedroom where he had found Defendant. The marijuana and rocks of crack cocaine were individually packaged as though for sale. He also found "rocking tubes" which are used to turn powder cocaine into rocks of crack cocaine as well as digital scales. Officer Teeters also assisted in executing search warrants at Defendant's residence on August 1, 2007 and February 29, 2008.

Defendant testified that he lived in the middle duplex in a row of three duplexes and that a tall hedge would have blocked officers' view of his residence. He testified, "[y]ou [can] see people coming toward [the duplexes] but you don't know which one they went in." He testified that he had a lot of friends, and they would visit frequently. He denied that any visitors to his house stayed for only 30 seconds and left. Defendant testified that he did not view marijuana as being illegal because he used it. He testified that he was unaware that there were drugs other than marijuana at his house on the three occasions police found drugs. He believed that others brought drugs into his house when they would "party." Defendant

denied using any drugs other than marijuana. Defendant acknowledged that he had been convicted of tampering with evidence. Defendant denied that he ran from police. Defendant testified that he used the digital scales found in his house to weigh marijuana he bought for his personal use.

*Analysis*

The sole issue Defendant raises for our review is whether the trial court erred by not excluding evidence of prior searches of Defendant's residence. Defendant asserts that evidence presented by the State regarding the prior occasions officers found drugs in Defendant's residence was confusing to the jury. Defendant also argues that evidence of the two prior searches was more prejudicial than probative and unnecessary to rebut a claim of accident or mistake or to show Defendant's intent to sell.

Rule 404(b) of the Tennessee Rules of Evidence provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes.

In *State v. Mallard*, 40 S.W.3d 473, 487 (Tenn. 2001), our supreme court held that "evidence that the defendant has committed some other crime wholly independent of that for which he is charged, even though it is a crime of the same character, is usually not admissible because it is irrelevant." Nonetheless, where the prior crime "is relevant to some matter actually in issue in the case on trial and if its probative value as evidence of such matter in issue is not outweighed by its prejudicial effect upon the defendant, then such evidence may be properly admitted." *Mallard*, 40 S.W.3d at 487. Additionally, this court has previously stated, "only in an exceptional case will another crime, wrong, or bad act be relevant to an issue other than the accused's character. Such exceptional cases include identity, intent, motive, opportunity, or rebuttal of mistake or accident." *State v. Luellen*, 867 S.W.2d 736, 740 (Tenn. Crim. App. 1992).

To admit such evidence, Rule 404(b) specifies the following:

> (1) The court upon request must hold a hearing outside the jury's presence;

> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;

(3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and

(4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn R. Evid. 404(b).

"The safeguards in Rule 404(b) ensure that defendants are not convicted for charged offenses based on evidence of *prior* crimes, wrongs or acts." *State v. Gilley*, 173 S.W.3d 1, 5 (Tenn. 2005) (citing *State v. James*, 81 S.W.3d 751, 758 (Tenn. 2002)) (emphasis in original). Should a review of the record indicate that the trial court substantially complied with the requirements of Rule 404(b), the trial court's admission of the challenged evidence will remain undisturbed absent an abuse of discretion. *James*, 81 S.W.3d at 759; *State v. Dubose*, 953 S.W.2d 649, 652 (Tenn. 1997).

We first note that the trial court substantially complied with the procedural steps announced in Rule 404(b) and held a hearing outside the jury's presence. The trial court found that there was clear and convincing evidence of the August 1, 2007 incident. The trial court reserved ruling on whether there was clear and convincing evidence of the August 19, 2007 incident. On the following day, however, the State presented the testimony of Officer Teeters, who testified regarding the events of that date, as well as the testimony of Mike Triplett, a court clerk employee who testified that Defendant pleaded guilty to possession of cocaine for the offense that occurred on August 19, 2007. Although the trial court did not subsequently amend its ruling to explicitly find that clear and convincing evidence existed of the August 19 incident, following the State's additional evidence, the trial court stated, "based on my ruling yesterday, . . . ." Under the circumstances of this case, we conclude that the trial court implicitly found clear and convincing evidence of the August 19 incident. The trial court also ruled that evidence of the prior searches was relevant to show Defendant's intent to sell and to show Defendant's actual possession of the drugs and that the probative value of the evidence was not outweighed by the danger of unfair prejudice. Therefore, we review the trial court's ruling for an abuse of discretion.

In making its ruling, the trial court emphasized that the prior searches occurred within seven months of the offenses in this case and at the same location. The trial court recognized that "in order to allow admission of prior similar crimes to show intent, the trial judge must find some relevance to the issue of intent other than propensity." In support of its argument that a material issue existed as to Defendant's intent to sell, the State asserted that evidence was presented at a prior trial "that [Defendant] was just an innocent bystander" and did not possess the intent to sell. Also, the following exchange occurred during the 404(b) hearing:

THE COURT: Well, let me ask you a question [defense counsel] and I don't mean to put you on the spot, but obviously, whatever – if I decide it has some relevance on the issue of intent, I have to weigh the probative value versus the prejudicial effect.

Very difficult in the abstract to do that without knowing what the defense theory is going to be.

So it's kind of hard on me here prior to hearing the evidence to know, for instance, if your client is going to acknowledge the intent element of something like that. And then, all of this is kind of overkill.

But it just depends on what your client's defense is going to be. Do you have any clue about what it's going to be so that I can weigh the probative value versus the prejudicial effect? Because that all depends on the issues involved in a particular case?

[Defense counsel]: We do, Your Honor, and we're not stipulating as to intent to manufacture, deliver or sell, by any means.

THE COURT: So the State's got to prove that he possessed it and that he had the requisite intent.

In ruling that a material issue existed for which evidence of the prior searches was relevant, the trial court found that the evidence was relevant to establish Defendant's intent to manufacture, sell, or deliver the controlled substances, a element of the offense for which Defendant was charged. "[T]he 'intent' exception [to Rule 404(b)] should not allow the introduction of other crimes simply to allow the state to prove the applicable mens rea." W. Mark Ward, Tennessee Criminal Trial Practice § 22:24 (2014-2015 ed.) (citation omitted). "The conclusion that a defendant had the specific intent to commit the crime charged on a specific day and time because he or she committed a similar crime on another day and time requires an inference that the defendant has the propensity to commit the crime on trial which is precisely what is condemned by the Rule." *Id*. (citation omitted).

In *Gilley*, our supreme court warned against making a 404(b) ruling prior to evidence being presented which makes the prior crimes evidence admissible. The court stated:

Although Rule 404(b) does not preclude the trial court from conducting a hearing or ruling prior to trial, we share the Court of Criminal Appeals' view that the Rule 404(b) criteria – in particular, the existence of a material issue at trial and the balancing of the probative value and unfair prejudice – require consideration of the evidence presented at trial. Thus, trial courts must be cognizant that if pretrial evidentiary rulings are made, they may need to be reconsidered or revised based on the evidence presented at trial.

*Gilley*, 173 S.W.3d at 6.

Here, the trial court ruled that evidence of the August 1 and 19 searches was admissible prior to the presentation of any proof based primarily on Defendant's unwillingness to stipulate an element of the offense. As alluded to above, until a material issue is created by the evidence presented at trial, evidence of prior bad acts is generally not admissible. We note that the State's first witness at trial, Detective Robinson, first testified about the details of the August 1, 2007 search prior to providing any details of the search on February 29, 2008, which led to the charges for which Defendant was on trial. At this juncture of the trial, no "material issue" as contemplated by 404(b) existed.

Furthermore, the evidence of the prior searches of Defendant's home fails part 4 of the 404(b) test. Under the circumstances in this case, we believe that the probative value of the evidence is outweighed by its unfair prejudicial effect, primarily because the offenses are so closely related. During the 404(b) hearing, the State, arguing in favor of the probative value of the evidence, stated that the prior searches and the search leading to Defendant's charges in this case were "glaringly similar." We believe that because evidence of the prior searches was presented first by the State at trial, Defendant was unfairly prejudiced. We have come to the conclusion, therefore, that evidence of the prior searches is not admissible on retrial unless the trial court determines, at the conclusion of any proof presented by Defendant (and not pre-trial), that the State can meet its heavy burden in this case showing that the probative value of evidence of the prior searches is not outweighed by the danger of unfair prejudice.

We further conclude that the trial court's pre-trial ruling which granted the State's request to be allowed to make a preemptive strike against Defendant with evidence of prior bad acts likely forced Defendant to testify. A defendant in some circumstances by testimony can open a door to allow prior crimes evidence that otherwise would be inadmissible. However, a defendant never opens that door based on proof he or she offered in a prior trial, or by refusing to stipulate proof establishing beyond a reasonable doubt an element of the crime charged.

Therefore, we conclude that the trial court abused its discretion by allowing evidence of the prior searches of Defendant's residence.  Moreover, we conclude that the error was not harmless and more probably than not affected the outcome of the trial.  *See* Tenn. R. App. P. 36(b); *State v. Luellen*, 867 S.W.2d 736, 741 (Tenn. Crim. App. 1992).  Accordingly, the judgments of the trial court are reversed, and this case is remanded for a new trial.

_____
THOMAS T. WOODALL, PRESIDING JUDGE