IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 14, 2015

**STATE OF TENNESSEE v. JUSTIN HADLEY**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 12-06564    Chris Craft, Judge**

---

**No. W2014-00985-CCA-R3-CD  -  Filed August 21, 2015**

---

A Shelby County Criminal Court Jury convicted the appellant, Justin Hadley, of theft of property valued $1,000 or more but less than $10,000, a Class D felony, and the trial court sentenced him as a Range III, career offender to twelve years.  On appeal, the appellant contends that the evidence is insufficient to support the conviction, that the trial court erred by allowing the State to introduce inadmissible propensity evidence, and that the State failed to give proper notice of its intent to seek enhanced punishment.  Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Phyllis Aluko (on appeal) and Trent Hall and Timothy Albers (at trial), Memphis, Tennessee, for the appellant, Justin Hadley.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Alexia Crump, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

At trial, Stephen Kelley testified that on the night of July 25, 2012, he drove his white 1992 Jeep Cherokee to a friend's house on Kearney Avenue near the University of Memphis and parked it across the street from the home.  He said that he locked the

vehicle and kept the keys in his pocket. Sometime between 12:30 and 1:00 a.m. the next morning, Kelley discovered that the Jeep was missing. He telephoned 911 and reported that it had been stolen. About three weeks later, the police found the Jeep and returned it to Kelley. He said that he had purchased the vehicle about two years before it was stolen for $1,800 and that it was worth about $1,200 at the time of the theft.

On cross-examination, Kelley testified that when the police returned the Jeep to him, the radio and all four speakers were gone. The steering column had been "popped" and "[t]here was trash all over the car." Kelley's baseball bag had been in the vehicle, and two of his baseball bats were missing. Regarding the Jeep's $1,200 value, Kelley stated, "I'm just guessing. I'm not really sure." However, he later sold the Jeep in its damaged condition to a neighbor for $1,000.

Officer Keithon Leon of the Memphis Police Department (MPD) testified that he responded to Kelley's 911 call on July 26. Kelley gave Officer Leon the vehicle identification number; the vehicle's license plate number, 713 SWY; and a description of the vehicle. Officer Leon entered the information into the National Crime Information Center (NCIC) database.

Officer Brandon Westrich of the MPD testified that on August 10, 2012, he responded to a "prowler call" in the area of Getwell and Elliston Roads. About 7:30 p.m., he was sitting in his patrol car and saw an older-model, white Jeep Cherokee pass by. Earlier in the day, Officer Westrich had heard a report about the Jeep's being involved in a "[b]eer theft." He began following the vehicle; "[ran] the tag," which was 713 SWY; and learned the Jeep was a "wanted vehicle." He activated his patrol car's blue lights and siren, but the person driving the Jeep did not stop. Officer Westrich said he got a good look at the driver, who was a white male, in his early thirties, and wearing a checkerboard shirt and black hat. Officer Westrich recognized the driver as the appellant, whom he had dealt with previously.

Officer Westrich testified that the appellant was traveling more than seventy miles per hour on residential streets and that at least one other patrol car was in pursuit of the vehicle. Officer Westrich's supervisor told him to stop chasing the Jeep, so he turned off his patrol car's emergency equipment and "backed off" his speed. He knew that the appellant possibly lived in the area and began searching for the Jeep in the event the appellant had abandoned it. He did not find the Jeep in the immediate area but found it about one-quarter mile away near a vacant apartment complex. The hood of the vehicle was warm. Officer Westrich walked to a wooded area behind the apartment complex and saw the appellant "laid out prone" on the ground. The appellant was wearing the same

clothing that Officer Westrich had seen when the Jeep passed by, and Officer Westrich arrested him for reckless driving. Officer Westrich never found the keys to the Jeep.

On cross-examination, Officer Westrich testified that it was still daylight when he first saw the Jeep and that the vehicle's windows were not tinted. No items related to the "[b]eer theft" were in the vehicle. The appellant was not intoxicated and did not have any weapons.

Officer Mujahed Abdellatif of the MPD testified that on August 10, 2012, he responded to a call regarding a prowler in an abandoned house. As the officers were leaving the house, they saw a white Jeep Cherokee. The Jeep, with license tag number 713 SWY, had been broadcast earlier that day as a stolen vehicle. Officer Abdellatif notified Officer Westrich about the stolen Jeep, and Officer Westrich "took off after it." Officer Abdellatif activated the emergency equipment on his patrol car and also began pursuing the Jeep. He said that the weather conditions were "[s]unny," that he saw the driver through the windshield, and that the driver was a white male wearing a checkerboard shirt and black hat.

Officer Abdellatif testified that the driver of the Jeep increased its speed to over 100 miles per hour on the highway. Due to the danger to the public, the officers were told to stop the pursuit. However, they could still see the Jeep ahead of them. Officer Westrich identified the driver as the appellant over the police radio, and the officers continued looking for the Jeep. They found it at the Marquis Gardens Apartments, and officers found the appellant in the woods.

Officer Bob Parker of the MPD testified that he did not participate in the pursuit of the Jeep on August 10 but that he went to the back of the Marquis Gardens Apartments "and waited for him to come through that way." Officer Parker said that he saw the appellant walking, that the appellant was "headed straight to me," and that the appellant's clothing matched the description given by officers. Officer Parker ordered the appellant onto the ground at gunpoint and took him into custody. Officer Parker said that the day before this incident, he had seen the appellant changing a tire on a dark-colored Jeep Cherokee. Officer Parker said it was the same Jeep he saw at the Marquis Gardens on August 10.

Marvin Scott, the manager of the Flash Market Shell on Getwell Road, testified that on the afternoon of August 10, 2012, a man "came in and grabbed two 12-packs of beer and ran out of the store with it." The man was white, had a goatee, and was wearing jean shorts and a baseball cap. Scott said the man "jumped in a Jeep and he took off." Scott saw the license plate number on the Jeep and gave it and a description of the Jeep to the police.

On cross-examination, Scott testified that the man was about five feet, nine inches tall and that he did not see the man with any weapons. The police obtained a copy of the store's video.

Officer John Rainey of the MPD testified that on August 10, 2012, he was working as the desk officer for the Airways precinct and received a shoplifting call from Marvin Scott. Scott reported that someone had taken beer from the Flash Market on Getwell Road and described the person as "5'9", about 180 pounds approximately, 30 to 45 years old, male, white, red goatee, and black or blue shorts and a red button-down checkered shirt." The man was in an older-model white Jeep Cherokee with license plate number 713 SWY. Officer Rainey said that he "ran" the tag number and that the Jeep had been reported stolen. Scott told Officer Rainey that video surveillance of the theft might be available, but Officer Rainey did not know whether officers obtained the video.

Shelva Stafford of the Shelby County Clerk's Office testified that she was the record-keeper for the county's vehicle registrations and renewals. License tag number 713 SWY was registered to a 1992 Jeep Cherokee owned by Laura D. Kelley. The tag was initially registered on October 24, 2008, and was renewed on October 8, 2009, October 11, 2010, October 26, 2011, and October 18, 2012.

Stephen Kelley was recalled by the State and testified that Laura Kelley was his mother. Ms. Kelley originally purchased the Jeep for Stephen Kelley's older brother. However, she later gave the Jeep to Stephen Kelley for his exclusive use. On cross-examination, Stephen Kelley testified that he sold the Jeep to neighbors on the same day that the police returned the Jeep to him. He did not know why the license tag was renewed in October 2012.

Officer Abdellatif was recalled by the State and identified a photograph of the appellant that was taken while the appellant was sitting in the back of a patrol car on August 10, 2012. On cross-examination, Officer Abdellatif acknowledged that the photo showed the appellant with a full, but neatly-trimmed, beard and that the appellant did not have a goatee.

At the conclusion of the proof, the jury convicted the appellant as charged of theft of property valued $1,000 or more but less than $10,000, a Class D felony. After a sentencing hearing, the trial court sentenced him as a Range III, career offender to twelve years in confinement.

## II. Analysis

A. Sufficiency of the Evidence

The appellant claims that the evidence is insufficient to support the conviction because no witnesses testified that he took the Jeep and because the State failed to show that he knew he was exercising control over the Jeep without the owner's permission. The State argues that the evidence is sufficient. We agree with the State.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. Id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

A guilty verdict can be based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting State v. Marable, 203 Tenn. 440, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a).

Taken in the light most favorable to the State, the evidence shows that someone stole Stephen Kelley's Jeep on July 25 or 26, 2012, and removed a radio, speakers, and baseball bats from the vehicle. Less than three weeks later, police officers recognized the Jeep as having been involved in a theft from a convenience store and attempted to stop it.

One of the officers recognized the appellant as the driver. Instead of stopping, the appellant fled from the officers, drove to a vacant apartment complex, and abandoned the Jeep. Shortly thereafter, an officer saw the appellant walking in the back of the apartment complex and noticed that his clothing matched that reported by the officers who had pursued the Jeep. Although no one saw the appellant take the vehicle, "[p]ossession of recently stolen goods gives rise to an inference that the possessor has stolen them." Bush v. State, 541 S.W.2d 391, 394 (Tenn. 1976). Moreover, the jury could infer from the appellant's fleeing from the police that he knew he was exercising control over the Jeep without the owner's effective consent. Therefore, the evidence is sufficient to support the conviction.

### B. Propensity Evidence

The appellant contends that the trial court erred by allowing the State to introduce evidence of his taking beer from the Flash Market on August 10, 2012, because the evidence was inadmissible propensity evidence. The State argues that the appellant waived this issue because he failed to include it in his motion for new trial and that it does not rise to the level of plain error. We agree with the State.

Before trial, the appellant filed a motion in limine requesting that the trial court prohibit the State and its witnesses from mentioning that the appellant was suspected of misdemeanor theft of the beer. In a jury-out hearing on the morning of trial, defense counsel argued that evidence of the shoplifting incident was inadmissible pursuant to Tennessee Rule of Evidence 404(b). The State argued that the evidence was relevant because:

> The car was parked at some abandoned apartment complex and the defendant was found in that wooded area immediately behind that complex.
>
> And I believe what his defense is going to be is well, I wasn't -- you know, I don't know how that car got there, somebody else stole that car and dropped if off, I didn't have anything to do with it. So I think identity is an issue in this case.

The trial court asked the State if the store clerk could identify the appellant as the man who took the beer, and the State answered, "I don't know if he can or not, your Honor. . . . He said he wasn't sure." The trial court ruled that evidence of the shoplifting incident was relevant to show why Marvin Scott reported the Jeep's tag number to the police and to show why the appellant fled from the police on August 10, 2012. The trial court also

ruled that the probative value of the evidence was not outweighed by the danger of unfair prejudice. After Officer Rainey's testimony, the trial court instructed the jurors that they could only consider the evidence "for the purpose of your deciding . . . why police officers were looking for this particular car that afternoon" and not "to show a predisposition of the defendant on trial for taking things."

As noted by the State, the appellant failed to include this issue in his motion for new trial. The appellant responds that his failure to include the issue in his motion "is not indicative of the defendant's intent to waive the issue." However, a defendant's failure to include an issue in a motion for new trial typically waives the issue on appeal. See Tenn. R.App. P. 3(e). Nevertheless, Tennessee Rule of Appellate Procedure 36(b) provides that "[w]hen necessary to do substantial justice, [this] court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." We may consider an issue to be plain error when all five of the following factors are met:

> (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (footnotes omitted); see also State v. Smith, 24 S.W.3d 274, 283 (Tenn. 2000) (adopting the Adkisson test for determining plain error). Furthermore, the "'plain error' must be of such a great magnitude that it probably changed the outcome of the trial." Adkisson, 899 S.W.2d at 642 (quoting United States v. Kerley, 838 F.2d 932, 937 (7th Cir. 1988)).

Tennessee Rule of Evidence 404(b) provides,

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:
>
> > (1) The court upon request must hold a hearing outside the jury's presence;
> >
> > (2) The court must determine that a

material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;

(3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and

(4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

See also State v. Thacker, 164 S.W.3d 208, 240 (Tenn. 2005); State v. Parton, 694 S.W.2d 299, 302 (Tenn. 1985). A trial court's decision regarding the admission of Rule 404(b) evidence will be reviewed under an abuse of discretion standard; however, "the decision of the trial court should be afforded no deference unless there has been substantial compliance with the procedural requirements of the Rule." State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997).

Generally, "[o]nly in an exceptional case will another crime, wrong, or bad act be relevant to an issue other than the accused's character. Such exceptional cases include identity, intent, motive, opportunity, or rebuttal of mistake or accident." State v. Luellen, 867 S.W.2d 736, 740 (Tenn. Crim. App. 1992). In making its decision regarding the admissibility of the testimony, the trial court must first determine if the offered testimony is relevant to prove something other than the appellant's character. "The jury may consider evidence admitted under 404(b) as substantive evidence at trial." State v. Kiser, 284 S.W.3d 227, 288 (Tenn. 2009).

Turning to the instant case, the trial court held that the beer theft was relevant to explain why Scott reported the license tag to the police, why the police began chasing the Jeep, and why the appellant fled from them. However, these facts were immaterial to the issues on trial, and, moreover, the jury did not need to hear about the theft of the beer in order to explain any of them. Instead, the officers simply could have testified that they began chasing the Jeep because it had been reported stolen. That said, Marvin Scott reported that the man who took the beer and fled in the Jeep was wearing a checkerboard shirt, which was relevant to show that the appellant, who was wearing a checkerboard shirt at the time of his arrest, was driving the Jeep on August 10. The identity of the person who possessed the Jeep was highly relevant to the State's case. Moreover, the trial court instructed the jurors that they could not consider evidence about the beer theft

"to show a predisposition of the defendant on trial for taking things." We generally presume that a jury has followed the trial court's instructions. See State v. Butler, 880 S.W.2d 395, 399 (Tenn. Crim. App. 1994). Accordingly, we conclude that the appellant is not entitled to plain error relief.

## C. Enhancement Notice

Finally, the appellant contends that the State failed to provide adequate notice of its intent to seek enhanced punishment for his being a career offender. The State argues that the appellant had adequate notice. We agree with the State.

Tennessee Code Annotated section 40-35-202(a) provides that "[i]f the district attorney general believes that a defendant should be sentenced as a multiple, persistent or career offender, the district attorney general shall file a statement thereof with the court and defense counsel not less than ten (10) days before trial." The statement "must set forth the nature of the prior felony convictions, the dates of the convictions and the identity of the courts of the convictions." Tenn. Code Ann. § 40-35-202(a). The purpose of the notice requirement "is to provide fair notice to an accused that he is exposed to other than standard sentencing." State v. Adams, 788 S.W.2d 557, 559 (Tenn. 1990). If information in the notice is omitted or incorrect, "the inquiry should be whether the notice was materially misleading." Id. Where an ambiguity or contradiction appears on the face of the notice, the defendant has a duty to inquire further. Id. The defendant must show prejudice to obtain relief. Id.

As noted by the State, the appellant failed to challenge the inadequate notice at trial, thereby resulting in plain error review. See Tenn. R. App. P. 36(b); State v. Fusco, 404 S.W.3d 504, 535 (Tenn. Crim. App. 2012). On June 6, 2013, more than one month before the appellant's trial, the State filed a notice of its intent to seek enhanced punishment "as a Multiple Offender . . . a Persistent Offender . . . or a career offender" pursuant to Tennessee Code Annotated section 40-35-202. In the notice, the State listed seven prior Class D or E felony offenses, the date of each conviction, and the court of each conviction. The appellant contends that the notice was defective because it "generally stated that the Defendant should be sentenced as a multiple, persistent or career offender" and "failed to notify the appellant of which range of punishment it would seek." We disagree. Although the notice did not specify that the appellant qualified as a career offender, the notice set forth the nature of the prior felony convictions, the dates of the convictions, and the identity of the courts of the convictions as required by the statute. Moreover, on October 17, 2013, more than five months before the appellant's sentencing hearing, the State filed a notice of enhancement factors in which it specifically stated that the appellant was a career offender. Although the second notice was untimely, the "remedy for untimely notice is the option of a continuance for

the defense, not preclusion of the State from seeking enhanced punishment." State v. Thompson, 36 S.W.3d 102, 115 (Tenn. Crim. App. 2000); see Tenn. R. Crim. P. 12.3(a). Finally, the appellant has failed to allege any prejudice. Therefore, we find no error, let alone plain error.

## III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA MCGEE OGLE, JUDGE